Kenneth GANTHER, Appellant

v.

The STATE of Texas, Appellee.

No. 14–04–01057–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 7, 2006.

Robert A. Morrow, Spring, for appellants.

Peyton Peebles III, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and ANDERSON.

## OPINION

JOHN S. ANDERSON, Justice.

A jury found appellant Kenneth Ganther guilty of robbery,[1] found two prior felony enhancements true, and assessed his punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division. In four issues, appellant challenges the validity of his waiver of his right to representation, denial of his request for "co-counsel," and the trial court's comments during voir dire. We affirm.

### PROCEDURAL BACKGROUND[2]

According to appellant, he requested self-representation as early as the probable cause hearing on August 15, 2003, the day after his arrest. Later the same month, however, appellant requested counsel, and the trial court appointed Kirk J. Oncken to represent appellant. In late October, the case was set for a November 12, 2003 bench conference to discuss self-representation. There is no reporter's record of that conference.

---

1. *See* TEX. PEN.CODE ANN. § 29.02 (Vernon 2003).

2. Because of the nature of appellant's issues, it is unnecessary to set forth the facts and circumstances surrounding the offense with which he was charged.

In mid-January 2004, Oncken filed a series of procedural motions, and appellant filed a pro se motion for the court to direct Oncken to file requested subpoenas. In that motion, appellant complained counsel was "hindering the preparations needed for trial where defendant faces 25 years to 99 years if convicted." Appellant also complained counsel had failed to visit appellant to discuss his case and spent only twelve minutes with appellant at his four previous court appearances. The record contains three additional motions filed in January 2004, over Oncken's name, but unsigned.

On February 9, 2004, appellant filed a letter with the court and a motion to proceed pro se because of "court-appointed counsel's deficient performance."[3] In the letter, appellant stated, "I understand the pitfalls of pro-se representation, but in my case I'm at a much greater advantage. I understand that I will be held to the same standards as an attorney and I would not expect anything less." In the motion, appellant referred to an October 30, 2003 hearing in which the trial court rejected appellant's request to have court-appointed counsel re-appointed as appellant's co-counsel so appellant could conduct his own defense. Appellant implied he had agreed to let counsel continue to represent him based on counsel's guarantees he would have subpoenas filed; appellant complained of counsel's subsequent lack of action.

The trial court heard the motion on February 16, 2004. Appellant complained that his hired investigator had repeatedly attempted to contact Oncken, but had been unsuccessful. Oncken responded that he and the court-appointed investigator had extensively investigated appellant's case and talked to everyone appellant had requested. Oncken agreed a private attorney's investigator had approached him and he had shared information with the investigator, but Oncken was unaware appellant had retained any other lawyer. Oncken also told the court appellant had drafted several motions filed with the court demonstrating "an understanding of the law" and showing appellant was "pretty well versed in criminal law and is competent to ... handle his own legal matters." The trial court denied appellant's motion to proceed pro se. The same day, Oncken filed several more signed motions.

On March 5, 2004, appellant wrote the court, "in order that the record on [his] motion to proceed in pro se ... will be accurately transcribed with the true facts for the Appellate Courts." He observed, among other matters, "Every motion that has been filed I drafted them and Mr. Oncken signed off on them. The same with the subpoenas that have been filed."

On April 8, 2004, appellant filed a pro se "Notice Concerning all Motions and Pleadings." Appellant stated, "I hereby give notice to the District Court and for the Appellate Court's Record that each motion and pleading that has been filed with the court that bears the name and signature of Kirk Oncken, Defendant's court appointed counsel was prepared by Defendant, Kevin Ganther and given to court appointed counsel to sign and file." The record contains several motions filed the same day, one pro se, the others signed by counsel.[4]

On May 7, 2004, the trial court again considered the issue of appellant's repre-

---

3. The letter and motion apparently were mailed February 4, 2004, but not filed with the court until February 9, 2004.

4. The record also contains a second pro se "Notice" filed the same day, in which appellant again represents, he "has previously prepared all pre-trial motions and had counsel to sign them and filed them."

sentation. Oncken informed the court appellant had submitted information to the Texas State Bar, the Bar had filed a grievance against Oncken as a result, and Oncken was requesting he be allowed to withdraw from the case. The court asked appellant whether he still wanted to represent himself. Appellant responded, "I can, sir, Yes, sir." The following dialogue ensued:

THE COURT: Do you still want to represent yourself?

THE DEFENDANT: I can.

THE COURT: Can you afford to hire a lawyer?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that if you cannot afford to hire a lawyer, you have the absolute right to ask me to appoint a lawyer to represent you?

THE DEFENDANT: Yes, sir.

THE COURT: And do you want to give up that right—

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT:—and represent yourself?

THE DEFENDANT: If you allow Mr. Oncken to withdraw, yes sir. Because what has happened Your Honor, since the beginning, since August 15th, when I first appeared in your court—

THE COURT: No. I'm going to allow Mr. Oncken to withdraw because of the grievance filed against him. Now, if you want me to appoint another lawyer to represent you, I will do that.

THE DEFENDANT: No, sir. No, sir. I don't want another lawyer.

THE COURT: You want to represent yourself?

THE DEFENDANT: Yes. I'll go ahead and represent myself.

THE COURT: You want to give up your right for me to appoint a lawyer as guaranteed to you by the 6th Amendment?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that by doing so, Mr. Ganther, if you represent yourself in this trial, since you do not have a law degree—is that correct?

THE DEFENDANT: No, I don't.

THE COURT: Have not been to college?

THE DEFENDANT: Yes, sir.

THE COURT: Have been to college?

THE DEFENDANT: Yes, sir.

THE COURT: And you graduated?

THE DEFENDANT: Yes, sir.

THE COURT: But you have not had any legal training?

THE DEFENDANT: Um, not actually, no sir.

THE COURT: Huh?

THE DEFENDANT: Not actually, no, sir.

THE COURT: Not any formal legal training?

THE DEFENDANT: Yes, sir.

THE COURT: But you do understand if I allow you represent yourself, you'll be held to the same standards of conduct during trial that a lawyer would? You understand that?

THE DEFENDANT: Yes, sir, I do understand that.

THE COURT: You don't get anymore advantages or breaks or leeway because you're not a lawyer if you choose to represent yourself.

THE DEFENDANT: Yes, sir.

THE COURT: I mean, any objections you make in your proceedings, if the objection is not proper, it will be denied. Anything that you fail to ask for properly, it's denied. Or if you fail to ask for

it, or it does not get done, you have to suffer the consequences of that. Do you understand that?

THE DEFENDANT: Yes, sir. I'm well aware.

THE COURT: And, you know, you will have to—you will be expected to pick this jury on your own and follow the rules of the voir dire process. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You have to follow the same rules and procedure regarding presentation of evidence, questioning, cross-examination of witnesses. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if you don't do it properly and the State objects, I sustain the objection, then that may work for or against you. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So, understanding all the risks involved in representing yourself, are you still absolutely certain that you want to give up your right to have me appoint a lawyer to represent you and allow you to represent yourself?

THE DEFENDANT: Yes, sir. Unless there would be standby counsel?

THE COURT: Huh?

THE DEFENDANT: Unless there could be standby counsel.

THE COURT: What do you mean unless there can be standby counsel? Nobody—you want to represent yourself?

THE DEFENDANT: Yes, sir, I will.

THE COURT: Right. I'm not going to have standby counsel.

THE DEFENDANT: That's fine, Your Honor.

THE COURT: Huh?

THE DEFENDANT: That's fine, Judge.

THE COURT: All right. So, it appears to me you've spent a lot of time in the law library, haven't you?

THE DEFENDANT: Some, some. Yes, sir.

THE COURT: You've been reading lots of the law books?

THE DEFENDANT: Yes, sir.

THE COURT: You've written out many of your own motions?

THE DEFENDANT: Right.

THE COURT: And so, are you—are you absolutely confident in your mind you've acquainted yourself enough with the legal process that you want to represent yourself?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I will allow Mr. Oncken to withdraw. I'll allow you to represent yourself.

The case proceeded to trial before a jury on October 11, 2004. During voir dire, the trial court informed the venire panel that appellant was exercising his Sixth Amendment right to represent himself. The trial court initially explained, "There are certain hoops that I've got to jump through to make sure that I allow Mr. Ganther to represent himself, and I've questioned him repeatedly on a number of occasions at length and explained to him all the pitfalls about representing himself at trial." The trial court then indicated appellant understood he was required to conduct himself like a lawyer. Several members of the venire panel asked questions about appellant's choice, and in the course of answering, the trial court stated, if at any time appellant asked for an attorney to sit with him and be available to answer questions, the trial court would grant that request, but appellant could not have a lawyer to try the case with him. The trial court also

explained that appellant had to establish to the court that he understood the risk of self-representation, then added, "You know, there's a saying around the courthouse that the lawyer who defends himself has a fool for a client, you know, but he has the right to do that." Finally, the trial court attempted to ascertain whether the panel members would conclude appellant was guilty because he was defending himself or, conversely, whether they might feel sympathetic toward him and hesitate to convict: "[S]ome people may say, well, gee, I wouldn't defend myself ... maybe that means he is guilty.... [T]he flip-side is this: There's the risk that people will think gee, poor Mr. Ganther.... I feel kind of sympathetic towards him."

During voir dire, the trial court also explained the effect of prior felony convictions on the punishment range for robbery:

What I want to know now is this: Is there anybody on the jury panel who could not consider the entire range of punishment for a person found guilty of the offense of robbery from a minimum of two years in prison up to the maximum 20 years in prison, or if he has one prior conviction from a minimum of 5 years in prison, a maximum up to 99 years in prison or life. If he has two prior, minimum 25 years in prison up to a maximum of 99 years in prison or life in prison?

Appellant did not object to the trial court's comments.

After the State rested and before putting on his evidence, appellant raised the issue of having a lawyer as "co-counsel." The record contains the following colloquy:

THE DEFENDANT: We were supposed to take up a couple of issues this morning.

THE COURT: You're right. What were they?

THE DEFENDANT: Um, the attorney issue and also—

THE COURT: Now, where is this attorney? I told you that you could have an attorney come sit with you as a standby attorney.

THE DEFENDANT: Yes, sir. But that's—remember I wanted to get that on the record?

THE COURT: Right.

THE DEFENDANT: Yes, sir.

THE COURT: Well, you can have a lawyer come sit with you as a standby lawyer, but I'm not going to allow you to have a lawyer come substitute in and start acting as your lawyer.

THE DEFENDANT: No, he wasn't going to substitute, I was talking about as co-counsel.

THE COURT: Right. I'll not allow him to participate as co-counsel with you and actively participate in the trial by asking questions and making arguments.

THE DEFENDANT: That's what I wanted to get on the record.

THE COURT: Right.

THE DEFENDANT: Yes, sir.

THE COURT: Is he even here?

THE DEFENDANT: No, sir.

THE COURT: All right.

THE DEFENDANT: Because we were supposed to get a ruling before we started the trial on that issue and we didn't.

THE COURT: So, where is he?

THE DEFENDANT: Um, I haven't contacted him because we didn't get a ruling.

THE COURT: All right. Well, I'm telling you if you want to have him come, he certainly is welcome.

THE DEFENDANT: No, sir. I just wanted to get a ruling as far as him being co-counsel, not standby counsel.

THE COURT: Right. I'm not going to allow you to have a lawyer come in here and participate as co-counsel and actively participate in the trial.

THE DEFENDANT: Yes, sir.

The jury found appellant guilty of robbery as charged in the indictment, found the two prior felony enhancements true, and assessed his punishment at confinement for life.

### DISCUSSION

### I. Point of Error One: Waiver of Right to Representation

■ In his first point of error, appellant argues the trial court did not obtain a valid waiver of his right to counsel. In all criminal prosecutions in which an accused may be punished by imprisonment, the accused has the right to assistance of counsel for his defense. U.S. Const. amends. VI, XIV; TEX.CODE CRIM. P. ANN. art. 1.051 (Vernon 2005); *see Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975); *Collier v. State*, 959 S.W.2d 621, 625 (Tex.Crim.App.1997). In lieu of being represented by counsel, however, a defendant also has a Sixth Amendment right to prosecute his own legal defense. *Faretta*, 422 U.S. at 818–21, 95 S.Ct. at 2532–34; *see also* TEX. CONST. art I, § 10; TEX.CODE CRIM. P. ANN. art. 1.05 (Vernon 2005). For the decision to represent one's self to be constitutionally effective, a defendant must make the decision (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Moore v. State*, 999 S.W.2d 385, 396 (Tex.Crim.App. 1999). In the present case, appellant argues he did not make his decision knowingly and intelligently.

■ A decision to waive counsel and proceed pro se is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Id.* at 396 n. 5. If such factors are not otherwise apparent from the record, a trial court's inquiry regarding the accused's waiver of counsel should center on his background, age, experience, and education. *See Johnson v. State*, 760 S.W.2d 277, 278 (Tex.Crim.App.1988). The accused should be aware there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights. *Id.* at 279. The trial court, however, need not follow a formulaic questioning or particular script in ascertaining the knowing and voluntary nature of an accused's waiver of counsel. *See Burgess v. State*, 816 S.W.2d 424, 428 (Tex.Crim.App. 1991).

■ In the present case, appellant had repeatedly asserted his desire to represent himself. The trial court permitted appellant to do so only after (1) informing him he had an absolute right to appointed counsel, he would be held to the same standards as an attorney, he would have to suffer the consequences of failing to make an objection or making an improper one, and (2) determining appellant had graduated from college, had spent time in the law library and had been reading law books, had written many of his own motions, understood and was aware he would be held to the same standards as an attorney, and was absolutely confident he had acquainted himself enough with the legal process to represent himself. The trial court's inquiry compares favorably to that held to be adequate in *Collier*. *See* 959 S.W.2d at 626.[5]

We overrule appellant's first point of error.

## II. Point of Error Two: Denial of Appellant's Request for "Co-counsel"

In his second point of error, appellant argues the trial court "committed reversible error" when it denied his mid-trial request for co-counsel. From the exchange that appears of record as well as the trial court's comments during voir dire, it appears the trial court had modified its pre-trial position and was willing to permit appellant to have stand-by counsel. Appellant, however, insisted on co-counsel.

We view appellant's request for "co-counsel" as a request for hybrid representation, or partially pro se and partially by counsel. *See Landers v. State*, 550 S.W.2d 272, 279–80 (Tex.Crim.App.1977). Although a trial court has discretion to permit hybrid representation, there is no absolute right to such representation. *Hathorn v. State*, 848 S.W.2d 101, 123 n. 12 (Tex.Crim.App.1993); *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex.Crim.App. 1989). A trial court abuses its discretion when its decision lies outside of the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.

Crim.App.1990) (stating same in context of establishing abuse-of-discretion standard of review for evidentiary rulings).

On the record before us, we cannot say the trial court abused its discretion in denying appellant's request for hybrid representation.[6] The court of criminal appeals has opined that hybrid representation has great potential for chaos. *See Landers*, 550 S.W.2d at 280. During voir dire in the present case, the trial court had explained to the venire panel that appellant would be representing himself. The trial court had also stated,

> At any time if Mr. Ganther asked me to appoint a lawyer to sit with him and to be available to answer questions that he has during trial, absolutely. And what the law does not allow is this: It does not allow what we call hybrid representation. It does not allow Mr. Ganther to do part of the trial and it doesn't allow the lawyer to do part of the trial. It's either one or the other. You either do all or none.

The trial court could perhaps more accurately have explained that it was the court that would not allow hybrid representation. Nevertheless, after explaining hybrid representation was not allowed, the trial court did not act outside the zone of

---

**5.** Unlike the inquiry in *Collier*, the inquiry in the present case does not include an explanation of the charge and the possible range of punishment. *See Collier v. State*, 959 S.W.2d 621, 626 (Tex.Crim.App.1997). In one of his motions, however, appellant characterized himself as "fac[ing] 25 years to 99 years if convicted." Although appellant did not correctly describe the range of punishment, he clearly understood the gravity of the charge. We also note, during the colloquy with the trial court, appellant may have attempted to condition his request to proceed pro se on availability of co-counsel. At that point, the trial court emphasized it would not permit stand-by counsel, appellant reiterated he wanted to represent himself. *See Scarbrough*

*v. State*, 777 S.W.2d 83, 93 (Tex.Crim.App. 1989) (stating request to proceed pro se is equivocal if made conditional on availability of selective aid of counsel). Finally, we disagree with appellant's suggestion that the non-open ended nature of the trial court's questioning rendered appellant's waiver invalid. In the present case, appellant, in his motions and letters to the court, made it eminently clear he understood he would be held to the same standards as counsel.

**6.** We do not have a reporter's record of the conference at which the trial court first informed appellant he could have stand-by counsel.

reasonable disagreement by remaining consistent with the procedure it had explained to the venire panel.

We overrule appellant's second point of error.

### III. Points of Error Three and Four: The Trial Court's Comments during Voir Dire

In his third point of error, appellant argues certain comments by the trial court regarding his decision to represent himself violated his due process rights. Specifically, he emphasizes the following comments, which occurred during an extensive interchange between the court and the venire panel:

- There are certain hoops that I've got to jump through to make sure that I allow Mr. Ganther to represent himself.

- Whoever you and I think the best lawyer in town is, he does not come down here and want to get appointed to criminal cases for free, at what little I can pay him today. So, you know, he is appointed a lawyer from the lawyers who, you know, are qualified, meet our qualifications to get court appointments for felony cases, very experienced lawyers, but certainly not the best lawyer in town.

- At any time if Mr. Ganther asked me to appoint a lawyer to sit with him and be available to answer questions that he has during trial, absolutely [he may have stand-by counsel].... He can certainly change his mind about wanting to have a lawyer be available to assist him in conducting the trial, but not to try the case along with him.

- You know, there's a saying around the courthouse that the lawyer who defends himself has a fool for a client.

- There's the risk that people will think, gee, poor Mr. Ganther.... I don't want to convict a guy of a crime that I believe beyond a reasonable doubt he is guilty of because the poor guy defended himself, so I don't want to convict him.[7]

In his fourth point of error, appellant argues the trial court committed reversible error by informing the jury he had two prior convictions. Specifically, he emphasizes the following comments:

- [W]here it is shown during a punishment phase of a criminal trial that an individual has one prior felony criminal conviction, the range of punishment is increased from ... 20 years up to 99 years in prison or life in prison.... [O]ur law has provided that where it is shown in a punishment phase of trial an individual has two prior felony convictions, the range of punishment is increased from a minimum of 5 years in prison up to 25 years in prison up to 99 years or life in prison.

- [T]here are some individuals that are found guilty of aggravated robbery who have one prior felony conviction.

- [O]r if he has one prior conviction.... If he has two prior....

- [O]r one prior conviction ... with two prior convictions....[8]

■ Appellant did not object to any of the trial court's comments. To preserve error, a defendant must make a timely and specific objection. Tex.R.App. P. 33.1; *see Villareal v. State,* 116 S.W.3d 74, 85 (Tex.

---

7. Appellant quotes extensive passages from the trial court's voir dire. We have included only those passages he has emphasized. His argument centers on the first and fourth passages cited above.

8. As with the comments on self-representation, we quote only the portions appellant has emphasized.

App.-Houston [14th Dist.] 2001, no pet.). Absent an objection, a defendant waives error unless the error is fundamental-that is, the error creates egregious harm. *See Villareal*, 116 S.W.3d at 85; *see also Beltran v. State*, 99 S.W.3d 807, 811 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd). Egregious harm is such harm that a defendant has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

■ *Comments on self-representation.* Appellant compares the trial court's comments regarding his self-representation with the comments of the trial court in *Blue v. State*, 41 S.W.3d 129 (Tex.Crim. App.2000). In *Blue*, the trial court told prospective jurors that (1) a trial delay was due to the defendant's attempt at making a plea bargain with the state and the defendant's prolonging the negotiations, (2) the trial court would prefer the defendant to plead guilty, and (3) there were reasons an innocent defendant might not testify, but, even knowing she was guilty, defense counsel might put Sister Theresa on the stand because nobody would believe she would lie. *Id.* at 130. Although the defendant did not object to the comments at trial, he complained of them on appeal. *See id.* The intermediate court concluded the error was waived because no contemporaneous objection was uttered; but the court of criminal appeals reversed, holding that the error was outside the scope of Rule 33.1. *See id.* at 130, 133. The judges voting to reverse, however, did not agree on the rationale. Four judges concluded the trial court's comments tainted the presumption of innocence and were fundamental error of constitutional dimension. *See id.* at 132 (opinion of Johnson, J.); *see also Saldano v. State*, 70 S.W.3d 873, 889 n. 72 (Tex. Crim.App.2002) (explaining *Blue* ). A fifth judge concluded the trial court's comments violated the right to an impartial judge. *See Blue*, 41 S.W.3d at 138 (opinion of Keasler, J.); *see also Saldano*, 70 S.W.3d at 889 n. 72 (explaining *Blue* ).

Because there is no majority opinion in *Blue*, it is not binding precedent. *See Pearson v. State*, 994 S.W.2d 176, 177 n. 3 (Tex.Crim.App.1999). Even if we were bound to follow the plurality opinion in *Blue*, none of the trial court's comments about appellant's self-representation rose to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex.Crim.App.2001) (stating, even if court of criminal appeals were bound to follow *Blue* plurality opinion, "[n]one of the trial judge's comments rose to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury"). Taken in context, the comments are comparable to those in *Saunders v. State*, in which the appellate court held "did not ridicule, or in any manner impugn Saunders' [sic] choice of self-representation." 721 S.W.2d 359, 364 (Tex. App.-Tyler 1985, pet. ref'd).[9]

We overrule appellant's third point of error.

---

9. Among other matters, the trial court in *Saunders* informed the jury:

"I have advised Mr. Saunders, as I have always advised persons who have come before me and asked or insisted upon their rights to represent themselves, that the course of action they have taken is dangerous, and is ill-advised, and that they should not do so. I have used, in admonishing Mr. Saunders, the example which I always use in those instances, and that is, that the Constitution probably gives oneself the right to do brain surgery upon yourself, if you elected to do so, but that it is not sound medical practice to attempt to perform brain surgery on oneself."

*Saunders v. State*, 721 S.W.2d 359, 364 (Tex. App.-Tyler 1985, pet. ref'd).

■ *Punishment range.* We also conclude the trial court's unobjected-to comments about the range of punishment did not rise to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury. The following passages are illustrative of the manner in which the trial court explained how the punishment range might be affected if a defendant had prior felony convictions:

THE COURT: Since 1974, which was the year that I started law school as a first-year law student, in my criminal law course we had the very first edition of the Texas Penal Code. We're now on the 20th edition. The Legislature has changed it every other year for the past 30 years, but the one thing the Legislature has never changed in 30 years is the range of punishment for a person found guilty of a second degree felony offense of robbery.

The range of punishment is a minimum of two years in prison—I'm going to put TDC; that's the old abbreviation for prison, and the Legislature has changed that. It's now TDCJID. Obviously, I prefer TDC, Texas Department of Corrections. And it's up to 20 years in prison and a fine up to $10,000 may be assessed.

Additionally, for the last 30 years our law has provided where it is shown during a punishment phase of a criminal trial that an individual has one prior criminal felony conviction, the range of punishment is increased from 2 years to 5 years in prison, the maximum increased from 20 years up to 99 years in prison or life in prison, and a fine up to $10,000 may be assessed.

Additionally, for the last—for the last 25 years our law has provided that where it is shown in a punishment phase of trial an individual has two prior felony convictions, the range of punishment is increased from a minimum of 5 years in prison up to 25 years in prison up to 99 years or life in prison. There is no fine.

We have this wide range of punishment in Texas for all persons who are convicted of a second degree felony offense of robbery from a minimum 2 years in prison up to a maximum of 20 years in prison and a $10,000 fine, because for the last 30 years the Legislature has clearly recognized every individual is different, the facts of their cases are different, and their backgrounds are different.

Some people found guilty of robbery get the minimum punishment, some get the maximum punishment, everybody else gets somewhere in between based upon whatever the jury decides to be the appropriate punishment for that particular case taking into consideration the facts of the case and the background of the defendant. They also clearly recognize there are some individuals that are found guilty of aggravated robbery who have one prior felony conviction. Some should get the minimum punishment of 5 years in prison, some should get the maximum, 99 or life. Once again, everybody else gets somewhere in between based upon whatever the jury decides to be the appropriate punishment for that particular case, taking into consideration the facts of the case and the background of the defendant.

They also clearly recognize that there are some individuals who are found guilty of robbery who have two prior felony convictions, some should get 25 years in prison, some should get the maximum, 99 years in prison. Once again, everyone else found guilty of robbery who has two prior felony convictions should get somewhere in between, based upon whatever the jury decides to

be the appropriate punishment for that particular case taking into consideration the facts of the case and the background of the defendant.

I've thrown a bunch of numbers at y'all. Does anybody have any questions about the range of punishment for a person found guilty of the offense of robbery?

. . .

VENIREPERSON: Will it be given to the jury prior to reaching punishment if there is a guilty verdict whether there are any prior convictions or not?

THE COURT: No, sir. It's not relevant.

. . .

What I want to know now is this: Is there anybody on the jury panel who could not consider the entire range of punishment for a person found guilty of the offense of robbery from a minimum of two years in prison up to the maximum 20 years in prison, or if he has one prior conviction from a minimum of 5 years in prison, a maximum up to 99 years in prison or life. If he has two prior, minimum 25 years in prison up to maximum of 99 years in prison or life in prison?

. . .

All right. There may be some of y'all out there thinking it's maybe a little unfair question since I don't know what the facts of this case are, I don't know what Mr. Ganther's background is, how could I possibly answer that question? That's the very point of my question. I'm not talking to y'all about this case.

I know you don't know what this case is about. I know you don't know what his background is, because I'm talking to y'all about every case.

In every case in Texas where a person is found guilty of the felony offense of robbery, each side, the State of Texas and the defendant is entitled to have a jury that can consider the entire range of punishment from the minimum punishment to the maximum punishment.

Thus, the trial court explained it was not talking about the facts of this case, but was inquiring whether the venire members could consider the full range of punishment that might be presented to them. The trial court's inquiry was a permissible inquiry. *See Bevill v. State,* 573 S.W.2d 781, 783 (Tex.Crim.App.1978) (stating, when jury may be called upon to assess punishment, both State and defendant have right to qualify jury on full range of punishment); *Martinez v. State,* 588 S.W.2d 954, 956–57 (Tex.Crim.App.1979) (holding that admonition of Code of Criminal Procedure Article 36.01, section 1—that, unless otherwise excepted, allegations of prior convictions for purpose of enhancement shall not be read to jury until punishment hearing—is not offended by either State or accused informing and qualifying prospective jurors as to full range of punishment applicable to enhanced offense, in order to intelligently exercise peremptory challenges); *see also Bowman v. State,* 782 S.W.2d 933, 937–38 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd) (overruling unpreserved point of error regarding prosecutor's use of "the" defendant, rather than "a" defendant in discussing effect of prior convictions on penalty range).[10]

10. Appellant contends his case is "controll[ed]" by *Clark v. State,* 878 S.W.2d 224 (Tex.App.-Dallas 1994, no pet.). In addition to not being controlling authority for this court, *Clark* is distinguishable. In *Clark,* the trial court stated the allegations in the en-

We overrule appellant's fourth point of error.

## CONCLUSION

Having overruled appellant's four points of error, we affirm the judgment of conviction.

hancement paragraphs meant the defendant had previously been convicted of two felony offenses. *See id.* at 225. Moreover, in *Clark,*

defense counsel objected to the comment at issue. *See id.*