Affirmed and Opinion filed March 30, 2006









Affirmed
and Opinion filed March 30, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00327-CR

____________

 

JUNIOR HERMAN
GORDON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause No. 991,014

 



 

O P I N I O N








Appellant, Junior Herman Gordon, was
indicted for the felony offense of aggravated robbery.  A jury convicted him and then sentenced him
to eighteen years= confinement in the Institutional Division
of the Texas Department of Criminal Justice. 
Appellant challenges his conviction in five issues: (1) the evidence was
factually insufficient to sustain his conviction; (2) the evidence was legally
insufficient to sustain his conviction; (3) the trial court=s comments to the
jury during voir dire were so prejudicial that they deprived him of a fair
trial; (4) the trial court reversibly erred by admitting a firearm into
evidence over his objection; and (5) his trial counsel was ineffective in not
requesting an instruction on the lesser-included offense of robbery.  We affirm.

Factual and Procedural Background

On June 14, 2004, sometime after 12:30
a.m., Randy Robertson was driving his Cadillac when a car suddenly pulled out
of a side street in front of his car. 
Three black males, not wearing any masks or disguises of any kind,
exited the car, drew guns, pointed them at Robertson, and demanded he exit his
car.  Robertson put his car in park,
which automatically unlocked the doors, and then was forcibly removed.  Robertson was wearing $70,000 to $80,000 in
jewelryCdiamond necklaces,
a platinum Rolex watch, and diamond cuff links. 
The robbers took all of the jewelry, Robertson=s car, and $800 to
$1400 cash that he had on his person and in his car.  Because the robbers had not made any attempt
to conceal their faces, Robertson feared they would kill him.

After the robbers drove away, Robertson
called 911 and asked to be patched through to OnStar.  The dispatcher sent an officer to Robertson=s location and put
him in touch with OnStar.  After
confirming with police that Robertson=s car had been
stolen, the OnStar operator gave police the location of the Cadillac, which was
approximately eighteen miles away from the site of the robbery.  Robertson described the robbers to the police
as having a medium complexion; he also testified that the one in charge was
giving orders to ABlack@ and AJunior.@








As police approached the home where they
ultimately found the Cadillac, they saw appellant peeking around a white
Pontiac parked in front of the home.  He
was looking down the street, and then ducking behind the Pontiac again.  After police drove past the homeCnot having yet
located the Cadillac as it was not immediately visible from the streetCappellant fled on
foot.  Police did not try to apprehend
appellant at that time, as they had no suspicion he was involved in the
aggravated robbery.  Police located the
car hidden in weeds in front of the home a little after 1:00 a.m.  On top of the Pontiac in front of the home,
police found the keys to the Cadillac and a gun used in the robbery.  Inside the Pontiac was the car cover for the
Cadillac and a camcorder that had been on the Cadillac=s backseat.  After realizing that appellant had been
standing near the stolen car, they radioed for other officers to locate and
detain appellant.  

When the officers located appellant, he
was wearing one of the stolen necklaces, had the two cufflinks in his pocket,
and was carrying fifty-one dollars. 
Police took appellant to a nearby Shipley=s donut shop,
where Robertson was waiting to identify a possible suspect.  On the way, appellant removed his do-rag and
the necklace.  When police and appellant
arrived, Robertson did not hesitate to identify appellant as one of the robbers
who put a gun to his head.  Robertson
also identified the necklace and cufflinks as his.  

Appellant claimed he was not involved in
the robbery.  Rather, his car had broken
down several miles from where police found the Cadillac and he was walking to
his cousin=s house. 
On his way, he saw a black or blue Expedition pull up to the house where
police found the Cadillac and Pontiac. 
Several men got out of the Expedition and began to run when police
entered the area.  Appellant walked up to
the house and found the cufflinks and necklace on the ground.  He did not notice the Cadillac.  He then resumed walking to his cousin=s house.

A jury convicted appellant of aggravated
robbery and sentenced him to eighteen years=
imprisonment.  He timely filed notice of
appeal.  We affirm.

Analysis

I.        Sufficiency
of the Evidence

A.      Legal
Sufficiency








Although appellant raises factual
sufficiency as his first issue, we address legal sufficiency first.  In a legal-sufficiency challenge, we view the evidence in the
light most favorable to the verdict.  King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  If any rational trier of fact could have
found the essential elements of the offense[1]
beyond a reasonable doubt, we will affirm. 
Id.  The evidence is
legally sufficient.

Within approximately one hour of the
robbery, Robertson identified appellant as one of the robbers.  Police saw appellant near the location where
they recovered the stolen car, a gun used in the robbery, and items stolen from
the car.  Appellant was also wearing one
of the stolen necklaces and had other stolen property in his pockets.  While on his way for a possible
identification, appellant removed the necklace and a piece of potentially
identifying clothing.  Robertson again
identified appellant as one of the robbers who wielded a gun during the trial,
while also stating that appellant wore nothing to cover up his face.  Robertson was thus in an excellent position
to identify appellant.  Viewed in the
light most favorable to the verdict, the evidence is legally sufficient.

B.      Factual
Sufficiency








Appellant challenges the factual sufficiency of the evidence
in his second issue.  When conducting a
factual sufficiency review, we view the evidence in a neutral light and will
set the verdict aside only if the evidence is so weak as to make the verdict
clearly wrong and manifestly unjust, or if the contrary evidence is so strong
that the standard of proof, beyond a reasonable doubt, could not have been
met.  Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004). 
While we have reviewed the entire record and have considered all
evidence presented at trial, we cannot assume the role of fact finder and
substitute our judgment for that of the jury. 
See Zuniga v. State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004)
(stating that appellate courts are not to Afind@ facts or substitute their judgment
for that of the jury).  The evidence is
factually sufficient as well.  

Below, appellant presented his version of
events.  He also provided testimony from
one other witness to corroborate part of his story.  Thus, in the end, the jury had to determine
whom it believed was most credibleCthe State=s witnesses, or
appellant=s. 
The State was able to show aspects of both appellant=s and his witness=s testimony that
might render their statements incredible or at least inconsistent.  When faced with the choice of believing
appellant=s inconsistent explanation, or the State=s witnesses, the
jury was entitled to choose the version testified to by the State=s witnesses.  Neither was the State=s evidence so weak
as to make the verdict clearly wrong or manifestly unjust.

In addition to Robertson=s testimony, which
would be sufficient on its own and is outlined above, the State also had
physical evidence.[2]  Although no usable fingerprints were
recovered from the Cadillac or the gun, appellant was carrying and wearing some
of the stolen property.  Police found the
gun, which Robertson said appellant used, in a location where appellant had
been spotted shortly before police detained him.  Additionally, next to where appellant had
been Apeeking@ down the street
at police, was the white Pontiac where police recovered other stolen propertyCproperty not taken
from Robertson=s person, but removed from the
Cadillac.  The evidence is factually
sufficient.  We overrule appellant=s first and second
issues.

II.       Trial
Court=s Comments During Voir Dire

In his third issue, appellant contends the
following, namely the statement from the trial court, was impermissible:








[Prosecutor]:          And you think [your nephew] was
treated fairly [in the criminal justice system]?

. . . .

[The Court]:  Let me intercede here.  I
hate that question, you think he was treated fairly.  The criminal justice system treats everyone
exactly alike.  The defendant controls
everything about the system.  He has the
right to have it presented to a grand jury or he can waive indictment and go to
trial.  He then has the right to an
attorney of his own choice.  If he doesn=t have one, there=s one appointed
for him.  He has the right to have a jury
trial or a court trial.  The State doesn=t have any say-so
in all that, the defendant controls everything. 
They may not like the outcome of a case, but still the jury is the one
that determines the outcome of the case. 
You may not like the police officer that made the arrest or he might not
like the Judge, but the system treats everybody the same.  And the Defendant is the one that controls
what the system does.  And ultimately it=s people like you
on the jury that controls whether someone is treated fairly or not fairly.  Go ahead, Counsel.

There was no objection to this statement.  However, appellant requests that we take
notice of this alleged Afundamental error[] affecting substantial
rights@ pursuant to Texas
Rule of Evidence 103(d).  Appellant
argues that the trial court=s comments in
effect told the jury that it was appellant=s fault they were
called for jury service, that appellant may not like the outcome of his case,
and that the trial court wished appellant Ahad entered a plea
of guilty and not wasted everyone=s time.@  According to appellant, these comments
impermissibly and unconstitutionally damaged the presumption of innocence in
the presence of the jury and thus required no objection.  As we explain below, the state of the law
regarding whether or not an objection is necessary is unclear.  However, regardless of whether appellant
needed to object, the trial court=s comments did not
Abear on the
presumption of innocence or vitiate the impartiality of the jury.@  Jasper v. State, 61 S.W.3d 413, 421
(Tex. Crim. App. 2001).








Initially, we note there is no uncertainty
that we may review fundamental errors without an objection.  See Tex.
R. Evid. 103(d); Jasper, 61 S.W.3d at 420; Ganther v. State,
B S.W.3d B, 2006 WL 278388
at *7 (Tex. App.CHouston [14th Dist.] Feb. 7, 2006, no
pet.).  However, trial court comments to
the jury may or may not be fundamental error requiring an objection.  See generally Jasper, 61 S.W.3d
at 421 (determining that trial court=s comments did not
bear on the presumption of innocence or vitiate the jury=s impartiality,
but avoiding the question as to whether appellant needed an objection to
preserve error; also noting that Blue is a plurality opinion and thus
not binding as precedent); Blue v. State, 41 S.W.3d 129, 132B33 (Tex. Crim.
App. 2000) (plurality) (holding that trial court=s comments during voir
dire tainted appellant=s presumption of
innocence in front of venire, did not require an objection and constituted
fundamental error); Ganther, 2006 WL 278388 at *7B8 (stating the
rule that we may take judicial notice of fundamental error, but deciding that
there was no fundamental error without directly determining whether or not
trial court=s comments generally require an objection);
Murchison v. State, 93 S.W.3d 239, 262 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d) (deciding that there was no fundamental
error in trial court=s comments and thus appellant needed to
object to preserve any error).  These
cases illustrate that while there appears to be no explicitly stated rule or
approach, courts tend to determine whether or not the trial court=s comments
impermissibly tread upon a defendant=s presumption of
innocence.  If so, then no objection is
necessary, and there is error; if not, then there is no error regardless of
whether appellant objected.








We conclude that the above comments do not
violate appellant=s right to the presumption of
innocence.  Moreover, it is our
considered opinion that the trial court=s comments did not
negate any explanation given to the jury regarding its duty to remain impartial
until it heard all of the evidence.  The
trial court merely commented on how the criminal justice system operates.  Describing the options for indictment,
appointment of counsel, and bench versus jury trial, the trial court never
commented on appellant=s guilt or innocence.  Unlike in Blue, there was no
discussion about plea deals or whether the trial court wished it didn=t have to preside
over this particular case.  Further, the
trial court specifically admonished the venire that it played a significant
part in determining whether the defendant received a fair trial.  As such, the trial court emphasized that the
individual jury members must set aside their personal opinions regarding
individual actors in the criminal justice system and processCsuch as police
officers or the JudgeCand had to treat the defendant fairly and
impartially when reaching a verdict. 
Therefore, the comments did not constitute fundamental error and we
overrule appellant=s third issue.

III.      Admission
of Gun into Evidence

We turn now to appellant=s fourth
issue.  Arguing that a gun admitted into
evidence was never linked to the robbery, appellant contends the trial court
erred in admitting it.  Appellant cites
no authority, does not address the standard of review, and misstates the
record.  We could dismiss this point of
error simply as inadequately briefed.  See
Tex. R. App. P. 38.1(h).  However, we will briefly address appellant=s argument.  

As we explain below, appellant
mischaracterizes the record when he argues A[t]he complaining
witness indicated that he could recognize the gun but he never stated whether
the gun that was actually admitted into evidence was the gun used or similar to
the gun used in the offense.@  Also, appellant does not cite a particular
rule of evidence that would mandate exclusion. 
We can only conclude that appellant contends the gun was irrelevant
absent a link to the offense.

As to whether Robertson identified the gun
as the one used, perhaps the State did not elicit precise language from
Robertson to spell out that he not only Arecognize[d] the
handgun most of all,@ but also that he recognized it as the
particular gun held to his head. 
Regardless of the language, the State proffered the gun as the one used
in the robbery, and the context of the questioning indicates that Robertson
identified the gun as the one put against his head.  We review the admission of evidence for an
abuse of discretion.  See Martin v.
State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005) (citing Sauceda v.
State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)).  The judge did not abuse his discretion.  After Robertson identified the gun as the one
used in the robbery, it was clearly relevant. 
We overrule appellant=s fourth issue.








IV.      Ineffective
Assistance of Counsel

In his final issue, appellant claims that
his trial counsel was ineffective in not asking for an instruction on the
lesser-included offense of robbery. 
Appellant=s claim is tied to his contention in the
previous issue that the gun was inadmissible. 
Appellant believes that, if the gun were not admitted, he could argue
that no deadly weapon was used, and that he was entitled to the instruction on
robbery. Appellant contends trial counsel was ineffective by failing to ask for
the lesser-included offense.  We
disagree.

The Sixth Amendment to the United States
Constitution guarantees the right to counsel, including the effective
assistance of counsel in criminal cases. 
The Supreme Court has developed standards to determine whether trial
counsel was ineffective in her representation, which we apply to each
ineffective assistance claim.  See
Rylander v. State, 101 S.W.3d 107, 109B10 (Tex. Crim.
App. 2003) (citing Strickland v. Washington, 466 U.S. 668 (1984)).  When claiming ineffective assistance of
counsel, appellant must show that (1) trial counsel=s performance was
deficient because it fell below an objective standard of reasonableness; and
(2) a probability sufficient to undermine confidence in the outcome existed
that, but for counsel=s unprofessional errors, the result of the
proceeding would have been different.  Id.
at 110.  Stated differently, appellant must
prove not only that his counsel=s performance was
not objectively reasonable, but also that the result likely would have been
different had counsel not made the error she made. 








On direct appeal, appellate courts
generally do not look favorably upon ineffective assistance claims.  See id. (stating that the record is
generally insufficient to show whether or not trial counsel=s strategy was
reasonable).  We have a strong
presumption that trial counsel=s decisions were
sound trial strategy.  Id.    The more appropriate vehicle for this claim
is a writ of habeas corpusCa collateral
attackCbecause in that
proceeding trial counsel may explain her actions.  Id. at 110B11.  Otherwise, the record will not provide the
proof necessary to show that trial counsel was so deficient to meet the first
part of the Strickland test.  Id.
at 110.  Thus, appellants face not just
the presumption that trial counsel=s performance was
based on sound trial strategy, but also the hurdle of an undeveloped record.

On this record, even if the gun were not
admitted, appellant would not prevail on his claim.  Robertson testified that more than one gun
was used during the robbery.  Robertson also
testified that appellant placed a gun against his head.  With this testimony, there is no evidence in
the record that would permit a jury to rationally conclude that if appellant is
guilty, he is guilty of only the lesser offense.  See Campbell v. State, 149 S.W.3d 149,
152 (Tex. Crim. App. 2004).  Thus, we
cannot conclude that counsel was ineffective as appellant alleges.  We overrule appellant=s final issue.

Conclusion

Having overruled each of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Opinion filed March 30, 2006.

Panel
consists of Justices Hudson, Fowler, and Seymore.

PublishCTex. R. App. P. 47.2(b)











[1]  The elements
of aggravated robbery are met if the defendant commits robbery as defined in
section 29.02 of the Texas Penal Code and he (1) causes serious bodily injury
to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury
to another person or threatens or places another person in fear of imminent
bodily injury or death, if the person is (A) 65 years of age or older; or (B) a
disabled person.  Tex. Pen. Code '
29.03.  A person commits robbery if, in
the course of committing theft as defined in Chapter 31 and with intent to
obtain or maintain control of the property, he: (1) intentionally, knowingly,
or recklessly causes bodily injury to another; or (2) intentionally or
knowingly threatens or places another in fear of imminent bodily injury or
death.  Tex.
Pen. Code ' 29.02.  





[2]  Appellant did
try to discredit Robertson=s testimony by showing inconsistencies such as whether
appellant=s complexion was as Robertson initially described it,
and whether Robertson had only later invented testimony about the names shouted
out during the robbery.  However, as we
have explained, these are credibility determinations and facts for the jury to
find.