Affirmed and Memorandum Opinion filed December 18, 2008








 Affirmed and Memorandum Opinion filed December 18, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00691-CR

_______________

 

DONALD CARTER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the County Criminal
Court at Law No. 6

Harris County, Texas

Trial Court Cause No. 1448002  

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury
convicted appellant Donald Carter of the misdemeanor offense of assault on a
family member, and the trial court sentenced him to one year in the Harris
County Jail, probated for one year on community supervision.  The trial court
also made a finding of family violence based on the jury=s verdict.  In four issues, appellant
challenges the legal and factual sufficiency of the evidence supporting his
conviction.  In a fifth issue, appellant asserts that the trial court=s comments during voir dire regarding
his decision to represent himself violated his right to a presumption of
innocence and a fair trial.  We affirm.








I.  Background

In
mid-April 2007, Harris County Sheriff=s Deputy John Black responded to a
911 call regarding a family disturbance at a residence in North Harris County. 
When he arrived at the residence, he found appellant and two younger children
and their mother outside the house.  Based on Black=s interview with appellant and the
others, appellant was arrested and later charged by information with the
offense of assault on a household member.  

Appellant elected to represent
himself during the proceedings at the trial level.  During voir dire, the trial
judge explained to the venire panel that it could not draw any conclusions
based on the fact that appellant had chosen to represent himself as follows:[1]

[Appellant] has chosen to represent himself.  I
explained all the pitfalls that that involves.  He understands it.  Bottom line
. . . [y]ou=re not to cut him any slack.  You=re not to feel sorry for him because he=s representing himself.

. . .

I need you to promise me right now you=re not going to give him any credit for representing
himself, any kudos, any brownie points, any leg up against the State to where
it=s like, oh, poor pitiful me against the big state of
Texas.

Everybody here on the panel [is] going to judge him just like you would
if he had a lawyer and not cut him any slack one way or the other because I=ve told him I=m
not cutting him any slack.[2]

At the close of voir
dire, both the State and appellant made their jury strikes; a jury was then
empaneled without objection.








The
State=s only witness during its
case-in-chief was Deputy Black.  Black testified that he arrived at appellant=s residence in response to a 911 call
made by a child stating that his stepfather had assaulted him.  When he
arrived, he observed the complainant, fifteen-year-old D.L., walking toward him
accompanied by his younger brother.  Both the boys appeared upset and were
crying.  Black also saw appellant standing close to the house holding a bloody
piece of cloth to the top of his head.  He stated he noticed the boys= mother standing in the yard, visibly
upset and shaken.

Black
immediately separated the parties so that he could speak to each person
independently.  He spoke to D.L. first.  Black testified that D.L. appeared
frightened, was red in the face and crying, and had a bleeding laceration
running down his jawline to his chin.  Black explained that D.L. told him that
appellant was his stepfather.  D.L. related to Black that appellant, his
stepfather, had hit him several times on the side of his head and on his face. 
According to Black, D.L. explained that appellant got angry with D.L. when he
did not want to go on a family outing.  D.L. told Black that appellant had hit
him on several occasions and that D.L. was afraid that appellant would continue
to beat him if he did not do something about it.[3] 
D.L. stated to Black that he hit appellant in the head with his skateboard
after appellant hit him repeatedly in the head and would not stop.  D.L. also
explained to Black that he had tried unsuccessfully to get away from appellant
before he hit appellant with the skateboard.  D.L. told Black that he called
police after his mother came outside of the house and restrained appellant. 
Black testified that he found D.L. to be credible and that he believed D.L.=s account of events.  According to
Black, there was no doubt in his mind that appellant had beaten D.L. that
day.   








On cross-examination, when questioned
whether he had any proof that D.L. was appellant=s stepson, Black responded that
appellant had told him that he was.  Black also testified that appellant had
stated that D.L. was a member of his household.  When questioned about
appellant=s own injury, Black stated that appellant had a two- to three-inch cut to
the top back of his head.  Black further opined that appellant could have
sustained such an injury to the back of his head when he was bending over D.L. 
He also acknowledged that he did not see the altercation between appellant and
D.L.; he stated he had only observed the aftermath of the incident. According
to Black, both D.L. and appellant had been evaluated by medical personnel after
the incident, but only appellant required further treatment.  In response to
appellant=s questions about why he did not arrest both D.L. and appellant, Black
stated,

I had a
female witness, [D.L.=s mother], who saw what happened.  I had [D.L.] that
explained to me what happened.  Judging by his mannerisms and the way he spoke
of it compared to [appellant=s] mannerisms
and the way [appellant] spoke, and then [D.L.=s] little brother=s statements, and then him telling me, you know, I
just - - I saw that evidence, I saw the injuries, and I determined that it was
[D.L.] that was being honest.

Finally, on re-direct,
Black testified that D.L.=s mother had corroborated D.L.=s version of events.  The State
rested at the conclusion of Black=s testimony.

Appellant
testified on his own behalf.  He stated that he did not assault D.L. and that
D.L. does not live with him and is not a member of his family. Instead,
appellant explained that he used Aparental discipline@ after D.L. assaulted him by hitting
him in the head with a skateboard.  During cross-examination, appellant
explained that D.L.=s mother was not in court to corroborate his version of events
because she had not been subpoenaed to testify.  He further stated that he did
not think it was necessary to bring D.L.=s mother to court because he had a
sworn statement from her; however, this sworn statement was not admitted
because the State objected on hearsay grounds.  Appellant also explained D.L.=s absence by stating that D.L. did
not want to come to court because he was Ahigh.@  He testified that D.L. made the 911
call that was played to the jury because he was Aon drugs at that time.@  After appellant rested, the State
presented evidence that both D.L. and his mother had been subpoenaed to
testify.  








Both
sides rested and closed, and the trial court charged the jury.  The jury
deliberated and found appellant guilty as charged in the information.  The
trial court sentenced appellant to one year in Harris County Jail, probated for
one year on community supervision.  This appeal timely ensued.

II.  Issues Presented

In his
first and second issues, appellant challenges the legal and factual sufficiency
of the evidence supporting his conviction because the State failed to rebut his
claim of self-defense.  In his second and third issues, appellant challenges
the legal and factual sufficiency of the evidence supporting his conviction of
assault on a household member.  Finally, in his fifth issue, appellant
complains that the trial court=s comments during voir dire regarding his decision to
represent himself denied him the presumption of innocence and the right to a
fair trial.

III.  Sufficiency of the Evidence

A.        Standard of Review

When
reviewing the legal sufficiency of the evidence, we do not ask whether we
believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318‑19 (1979).  Rather, we examine all the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Id. at 319; Mason v. State, 905
S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).  Our review of the evidence
includes both properly and improperly admitted evidence.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  We consider both direct and
circumstantial evidence, and all reasonable inferences that may be drawn
therefrom in making our determination.  Id.








When
reviewing the factual sufficiency of the evidence, on the other hand, we view
all the evidence in a neutral light and set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we may reverse for
factual insufficiency, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence
contradicts the jury=s verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  When reviewing the evidence, we must avoid intruding on the
factfinder=s role as the sole judge of the weight and credibility of the witness
testimony.  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (en
banc). We do not re‑evaluate the credibility of witnesses or the weight
of evidence, and we will not substitute our judgment for that of the
factfinder.  Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998).  Finally, we must discuss the most important and relevant evidence that
supports the appellant=s argument on appeal.  Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003).  

B.        Self-Defense

In his
first two issues, appellant asserts that the evidence is legally insufficient
because the State failed to rebut his claim of self defense and that the evidence
is factually insufficient because it does not support the jury=s rejection of his claim of self
defense.  We consider both these issues together, applying the appropriate
standard of review to each. 








A person
is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself
against the other=s use or attempted use of unlawful force.  Tex. Penal Code Ann. ' 9.31(a) (Vernon Supp. 2008).  Once
the issue of self-defense is raised, the State bears the burden of persuasion
to disprove the defense.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex.
Crim. App. 2003).    Importantly, the burden of persuasion is not one that
requires the production of evidence; rather, it requires only that the State
prove its case beyond a reasonable doubt.  Id.  The issue of self‑defense
is a fact issue to be determined by the jury, which is free to accept or reject
any defensive evidence on the issue.  Saxton v. State, 804 S.W.2d 910,
914 (Tex. Crim. App. 1991) (en banc).  Finally, when a jury finds the defendant
guilty, it implicitly finds against the defensive theory.  Zuliani, 97
S.W.3d at 594.

In these
two issues, appellant asserts that the State did not provide any testimony from
an eyewitness to the altercation because it did not call the complainant, his
mother, or his brother to rebut appellant=s claim of self defense.  Although
none of these witnesses testified at trial, Deputy Black testified in some
detail regarding their statements at the scene.  And unobjected-to hearsay
statements, such as these statements made to Black at the scene of the
altercation,[4] are not
denied probative value merely because they are hearsay.  Tex. R. Evid. 802; Fernandez v.
State, 805 S.W.2d 451, 455B56 (Tex. Crim. App. 1991) (en banc) (AHaving failed to object, appellant
must be prepared to accept the concept that hearsay could be considered by the
trier of facts as probative evidence, to be assessed and weighed along with, and
equal to, the other evidence admitted at trial.@ (emphasis added)); Jackson v.
State, 110 S.W.3d 626, 635 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d) (stating that a criminal
conviction for assault of a family member may rest on hearsay despite the
complainant=s trial testimony to the contrary).  








The
evidence presented at trial through Deputy Black established that appellant is
guilty of assault.  First, when Black responded to the 911 call, he found D.L.
upset, crying, and in pain, with a large gash on his face.  Second, Black
testified that D.L., his mother, and his brother all similarly described
appellant=s assault of D.L.  Finally, the jury heard the recording of D.L.=s 911 call, on which D.L. stated that
his Astepdad@ had started hitting him and he hit
his stepfather back.[5]  And, as
discussed in more detail below, appellant admitted to Black that he was D.L.=s stepfather.  

Although
appellant testified that he was not the aggressor and that he was exercising
his right to Aparental discipline@ when D.L. was injured, the jury was entitled to reject his
version of events.  See Lancon v. State, 253 S.W.3d 699, 706B07 (Tex. Crim. App. 2008).  Viewing
this evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found that appellant assaulted D.L.  Further,
viewing this evidence in a neutral light, we cannot say that the jury=s verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  We
therefore overrule appellant=s first and second issues.

C.        Assault on a Household Member

In his third and fourth issues,
appellant challenges the legal and factual sufficiency of the evidence to
support the jury=s conclusion that he assaulted a household member.  As he
does in his first two issues, appellant again complains that there is no Adirect@ evidence that the complainant lived
in appellant=s household.[6]  He
emphasizes that the only direct evidence, his own testimony, contravenes the
conclusion that D.L. lived with him.  But with regard to the finding of family
violence, appellant elicited the following testimony regarding his own
out-of-court statements to Deputy Black that established D.L. was a member of
his household:








Q.:       Now, you state there was a - the individual was being
assaulted by his stepfather.  Do you have any proof that [D.L.] is even this guy=s step-father or well, I=m the stepfather of [D.L.]?

A.:       Yes, you told me you were.

Q.:       I told you that?

A.:       Yes, sir.

Q.:       And [D.L.] lives in the same household?

A.:       At the time you were all in the same house, yes.

Q.:       But do you have any proof [D.L.] was actually living in
this house at the time?  Because I see on your police report -

The Court:      Yes or no.  Do you have any evidence?

Q.:       Do you have any evidence?

The Court:      Yes or no.

A.:       Your statement, yes.

Q.:       You do have evidence?

A.:       Yes.

Q.:       Which is what?

A.:       You told me. 

Q.:       Oh, I told you that they were living in the same
household?

A.:       Yes.

(emphasis added). 
Although appellant points to his own testimony that D.L. did not live with him
because he and his mother were from Arizona, the jury was free to accept or
reject any portion or even all of his testimony.  See Manning v. State,
112 S.W.3d 740, 746 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  Instead, the jury could have
concluded that appellant=s out-of-court statements to Deputy Black were more
credible.  See Jackson, 110 S.W.3d at 635.  Further, the subpoenas
issued to D.L. and his mother were both addressed to appellant=s residence, and the sheriff=s return indicated they were executed
in person.  The subpoenas and sheriff=s return were  admitted into evidence
and further support the jury=s conclusion that D.L. lived in appellant=s household.








In sum,
viewing this evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could have found that appellant assaulted a
member of his household.  Further, viewing this evidence in a neutral light, we
cannot say that the jury=s verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  We therefore overrule appellant=s second and third issues.

IV.  Voir Dire
Comments

Appellant
complains in his fifth issue that the trial court=s comments about the jury not Acutting@ appellant Aany slack@ because of his choice to represent
himself violated the presumption of innocence and his right to a fair trial. 
We disagree for several reasons.

As a
preliminary matter, appellant did not object to any of the trial court=s comments.  Absent an objection, a
defendant waives error unless the error is fundamental, i.e., causes
egregious harm.  See Ganther v. State, 187 S.W.3d 641, 650 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).  Egregious harm results when the
error deprives the defendant of a fair and impartial trial.  See, e.g.,
id.; Payne v. State, 194 S.W.3d 689, 697 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).








Appellant relies on Blue v. State[7]
to support his contention that the trial court=s comments excerpted above caused him
egregious harm.  But because there is no majority opinion in Blue, it is
not binding precedent.  See Ganther, 187 S.W.3d at 650.  Moreover, the
trial court also emphasized that the jury should not hold appellant=s decision to represent himself
against him.[8]  Finally, the
trial court also carefully explained the presumption of innocence to the jury:


You go back there after you=ve
heard all the evidence and after both sides have argued their case to you and
you determine whether or not the prosecution has proved the defendant guilty
beyond a reasonable doubt.

If they don=t you find him not guilty and you leave here with your
head high.  You might not like the verdict.  But if they don=t meet their burden you find him not guilty.

. . .

As he sits here, the defendant is presumed to be innocent.  Doesn=t mean he is innocent means he=s presumed to be innocent.  Can everybody here follow
that law and presume [him] to be innocent?  Everybody on the panel shake your
head.  Please give me a nice good head shake or else I got to take you
individually.

Juror No. 4.  Good.  Thank you.  Record will reflect that all members
of the jury panel answered in the affirmative.








Taken in
context, we conclude that the trial court=s statements did not rise to the
level to cause egregious harm.[9]  Under these
circumstances, we cannot say that the trial court=s comments deprived appellant of a
fair and impartial trial.  We therefore overrule appellant=s fifth issue.

V.  Conclusion

Because
the evidence is both legally and factually sufficient to support appellant=s conviction, we overrule his first
four issues.  We overrule his fifth and final issue because the trial court=s voir dire comments did not deprive
appellant of a fair and impartial trial.  We therefore affirm the trial court=s judgment.

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed December 18, 2008.

Panel consists of Chief Justice
Hedges, Justices Guzman, and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Appellant did
not object to any of the trial court=s
comments to the venire panel.





[2]  These are the
comments about which appellant complains in his fifth issue for review
discussed below.





[3]  After Black
described his conversation with D.L., a recording of the 911 call made by D.L.
was admitted and played for the jury.  On this tape, D.L. reported to the 911
operator that his stepfather was hitting him and trying to force him to go
somewhere and that he hit his stepfather back.  He also stated that his
stepfather was hitting his mother.





[4]  As noted
above, Black testified that the complainant, his mother, and his brother all
described a similar sequence of events, in which a verbal altercation between
appellant and D.L. escalated into a physical altercation, with appellant as the
aggressor.  





[5]  D.L. also
stated on the 911 tape that his stepfather had hit his mother:

D.L.:     My stepdad was trying to force me to go [inaudible] and he
comes over and started hitting me, then he started [inaudible] my mom
[inaudible], then he started hitting me, and I [inaudible] hit him back.@

911 Operator:     So he was hitting on you and your
mom?

D.L.:     Yes.





[6]  AHousehold@ means a unit comprised of people living together in
the same dwelling, regardless of whether they are related to each other.  Tex. Fam. Code Ann. ' 71.005 (Vernon 2002).  





[7]  41 S.W.3d 129
(Tex. Crim. App. 2000) (en banc) (plurality op.).





[8]  For example,
shortly after cautioning the jury to refrain from holding appellant to a
standard less than that of a lawyer, the trial court stated,

You=re not going to hold it against him because he=s representing hi[mself] . . . .  Or because you think
it=s a stupid decision to represent himself.  He=s got that right and chosen it.

And that=s all I care about is you=re not going to hold it against him.  And nobody=s going to hold it against him the fact that he=s representing himself.  Is that correct?

It may not be your choice.  You may not think it=s a wise choice.  But can everybody follow the law
when I tell you you can=t hold it against him that he=s [representing] himself?





[9]  In Ganther,
we concluded that the trial court=s
comments during voir dire regarding the appellant=s decision to represent himself did not cause the appellant egregious
harm.  See Ganther, 187 S.W.3d at 650.  Among other things, the trial
court there informed the venire panel, A>You
know, there=s a saying around the courthouse that the lawyer who
defends himself has a fool for a client, you know, but he has the right to do
that.=@  Id. at 646.  The trial court also attempted
to ascertain if the venire panel members would judge appellant because he had
chosen to represent himself by stating: A>[S]ome
people may say, well, gee, I wouldn=t
defend myself . . . maybe that means he is guilty . . . .  [T]he flip-side is
this: There=s the risk that people will think gee, poor Mr.
Ganther . . . .  I feel kind of sympathetic towards him.=@  Id. (alterations in original).  We can
discern no meaningful distinction between these comments and the ones made by
the trial court in this case.