Affirmed and Memorandum Opinion filed September 5, 2006








Affirmed and Memorandum Opinion filed September 5, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00131-CR

_______________

 

LAMONT LENORD DIXON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 949,847

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

A jury
found appellant, Lamont Lenord Dixon, guilty of murder and sentenced him to
fifty years= confinement. In seven issues, he contends the trial court violated his
constitutional rights by (1) denying his motion to suppress his statement to
police officers, (2) misstating the law during jury selection, (3) denying a
challenge for cause, (4) denying his motion for judgment of acquittal, (5)
excluding testimony as Ainadmissible character evidence,@ (6) admitting photographs of the
deceased, and (7) excluding his statement to police officers.








I.  Background

Appellant
was accused of murdering Alfredo Bonilla.  Appellant lived with his mother and
stepfather, Tammy and Willie Bookman, across the street from the Bonilla
family.  According to the State=s evidence, on May 23, 2003, Bonilla walked his young son to
the bus stop for school.  The bus stop was on a corner right behind the Bookman
home.  Bonilla left the bus stop at about 7:10 a.m.  His family expected he
would return home to sleep because he had worked all night.  Typically, he
would pass the Bookman house on his way home.  However, around noon, Bonilla=s mother realized he was not home,
but his vehicle was parked in the driveway.  The family began searching for
him.

By 6:40
a.m. that morning, all residents of the Bookman home except appellant had left
for school or work.  Between 7:08 a.m. and 7:15 a.m., Mary Rodriguez, who lived
diagonally behind the Bookmans, heard four or five episodes of loud screaming
from the direction of the Bookman home.  Between 7:10 a.m. and 7:15 a.m.,
Catherine Martinez, who lived directly behind the Bookmans, heard a male
screaming, AHelp me. Help@ from the direction of the Bookman home.  She then saw
someone walking in the Bookmans= backyard but could not determine the person=s identity.  She also heard sounds Alike a mentally retarded child
moaning.@

At
approximately 4:30 p.m., appellant called Mrs. Bookman at work and said that
their home had been burglarized while he was out looking for a job.  When Mrs.
Bookman arrived home, she noticed a front window was broken.  Appellant was
wearing gloves and was cleaning.  Mrs. Bookman asked what he was cleaning, and
he replied, Ablood on the floor.@  He did not tell her the source of the blood but simply
stated that he thought he needed to clean up.








Houston
Police Officer Brett Cross initially responded to the report of a burglary at
the home.  Mrs. Bookman told him someone broke the front window and ran out the
back door.  She pointed out a trail of blood leading from the window to the
back door.  Appellant was wearing a white Latex glove on his left hand.  Mrs.
Bookman explained they were cleaning blood she thought had resulted from
someone breaking the window.  Officer Cross was skeptical a burglary had
occurred.  The exterior screen was still in place, and there were glass shards
between the broken window and the screen.  There were no signs of forced entry,
and Mrs. Bookman reported that no property was missing.  Officer Cross left
after completing his investigation although he would return later after a
subsequent dispatch to the home.

In the
meantime, Bonilla=s family was still searching for him.  Mrs. Bookman told
Bonilla=s wife about her broken window.  Mrs.
Bonilla believed the broken window was related to Bonilla=s disappearance.  Ronis Cruz, one of
Bonilla=s relatives, looked in the Bookman
home and saw blood on the carpet and on a sofa.  Mrs. Bookman allowed Cruz to
look in her backyard.  Cruz discovered Bonilla=s dead body behind a shed.  A ladder,
some rags, and a reindeer decoration were piled on top of the body, and it was
covered in ants.

Mr.
Bookman eventually arrived home and observed the broken window.  He thought the
window had been broken from the inside.  Mr. Bookman saw cuts on the palms of appellant=s hands.  He asked how appellant got
the cuts.  Appellant did not respond but was Ajust real nervous.@








Several
officers testified regarding their investigation and search of the Bookman home
on the evening of the murder.  They also believed the window had been broken
from the inside.  Further, the blinds were broken consistent with an object or
person falling against them.  Large areas of blood had pooled on the carpet in
the area of the broken window.  Although someone had attempted to clean the
surface, blood was still saturated into the carpet.  There was blood on the
blinds and on various items of furniture near the window. Someone had also
cleaned bloody foot prints on the linoleum floor in the front entry and had
tried to clean blood on the dining room carpet.  A vacuum cleaner was out, and
there was blood on the handle.  There was blood on the inside knob of the back
door.  The officers recovered Latex gloves containing a small amount of blood
and an empty APine =O Pine@ bottle from an inside trash can.  They recovered a comforter saturated
with blood, a Clorox bottle, and bloody Latex gloves from a trash can on the
back patio.  The inside of this trash can was covered in blood.

In
addition, the officers found bloody sandals and Bonilla=s eyeglasses in appellant=s upstairs bedroom.   Under appellant=s bed, the officers found Bonilla=s shoes and a bloody knife handle
with a missing blade which matched the set of knives in a block in the Bookman
kitchen.  They discovered bloody clothes and a bloody towel in appellant=s closet.  The officers also noticed
the cuts to the inside of appellant=s hands.  One officer testified some
cuts were consistent with a person=s hands slipping across the blade
while holding a knife.  In addition, there appeared to be blood on appellant=s right ankle and left wrist but no
corresponding injuries and blood transfer on the bottom of his left foot
consistent with having walked in blood.  An officer removed the Latex glove from
appellant=s hand and observed a red substance on the glove.

The
officers explained that Bonilla=s body was discovered in a narrow space between the shed and
a fence.  A comforter was beneath, and wrapped partially around, the body. 
Bonilla=s arms were bound with plastic trash
bags, and his arms were above his head consistent with his body having been
dragged to that location.  Some lacerations and abrasions on the legs and feet
were consistent with the body having been dragged across the yard. Blood on the
bottom of the feet was consistent with Bonilla having stepped in blood.

The
autopsy revealed that Bonilla received at least eighteen Asharp force@ stabbing or cutting injuries to his
head, neck, arms, and back.  A stab wound through his back caused his lung to
collapse and the left side of his chest to fill with blood.  The knife blade
was left embedded in this wound.  Some of the wounds to Bonilla=s head were inflicted with such force
that they caused small fractures to his skull.  There were contusions,
abrasions, and lacerations to the head, scalp, neck, arms, and legs and various
lesions indicating ants had   infested his wounds.








Appellant
and his family voluntarily went to the police station the night these events
were discovered.  Officer C.T. Mosqueda began an audiotaped and videotaped
interview of appellant after appellant waived his Miranda rights. 
During a break, Officer Alfredo Mares spoke casually with appellant.  Appellant
agreed to continue the interview with Officer Mares after again waiving his Miranda
rights.  Appellant moved to suppress the statement, alleging he was incompetent
to waive his Miranda rights.  The trial court denied the motion to
suppress.[1]

II.  Motion to Suppress 

In his
first issue, appellant contends the trial court erred by denying his motion to
suppress and admitting his statement.  However, the statement was not admitted
during the guilt/innocence phase.  Although Officers Mosqueda and Mares
testified that appellant made a statement and described the surrounding
circumstances, the State decided against offering the statement.  Appellant
challenges only the alleged admission of the statement during the
guilt/innocence phase.[2]  Therefore,
we need not decide whether the trial court erred by denying appellant=s motion to suppress.  See Baker
v. State, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997) (recognizing where
statement obtained as a result of an interrogation is not used by State as
evidence, or otherwise to obtain a plea or conviction, appellate court need not
entertain a challenge to the admissibility of the statement).








Appellant
also suggests that any Ainformation@ obtained as a result of his statement was inadmissible. 
However, on appeal, he identifies no evidence that was allegedly obtained as a
result of his statement and admitted at trial.  Moreover, appellant represented
to the trial court that his motion to suppress concerned only the statement and
not any other evidence.  Accordingly, appellant waived any complaint regarding
admission of evidence allegedly obtained as a result of his statement.  See
Tex. R. App. P. 33.1(a).  We
overrule his first issue.

III.  Trial Court=s Statements
During Jury Selection

In his
second issue, appellant asserts the trial court misstated the law regarding
article 38.23 of the Texas Code of Criminal Procedure during jury selection. 
Under article 38.23, when a factual dispute arises on whether evidence was
obtained illegally, the trial court must instruct the jury that, if it
believes, or has a reasonable doubt, such evidence was obtained illegally, it
shall disregard such evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005); Atkinson v. State,
923 S.W.2d 21, 23 (Tex. Crim. App. 1996), overruled on other grounds by Motilla
v. State, 78 S.W.3d 352, 356B57 (Tex. Crim. App. 2002).

During jury
selection, appellant=s counsel discussed article 38.23 to determine whether
prospective jurors could potentially disregard any evidence that was obtained
illegally.  Later, the trial court asked whether any prospective jurors needed
clarification of article 38.23.  A prospective juror inquired about the
provision.  In response, the trial court gave a lengthy explanation.  Although
appellant cites the entire explanation and asserts the trial court Atotally misstated the law,@ he emphasizes four portions.








However,
appellant waived his complaint by failing to object to the trial court=s statements.  See Tex. R. App. P. 33.1(a).  Moreover,
appellant does not make any argument or cite any authority to show the trial
court=s statements were incorrect, much
less that he was  harmed by the statements.[3] 
See Tex. R. App. P. 38.1(h)
(requiring brief to contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record).








Regardless,
the record demonstrates that the trial court=s statements, even if incorrect,
caused no harm.[4]  Two of the
statements cited were general explanations regarding article 38.23.[5] 
The third statement concerned a hypothetical illustration of article 38.23.[6] 
The fourth statement is more a comment than an explanation of article 38.23:
the trial court stated, Awe are all tired of talking about it.@  It is not exactly clear what the
trial court meant by this comment.  When considered in context, at worst, the
trial court indicated that it hoped the issue of illegally-obtained evidence
would not arise during trial because it was tired of discussing the issue.[7] 
Therefore, at worst, the trial court questioned the merits of a potential
article 38.23 claim in this case. 

However,
because appellant=s statement was not admitted, there was no issue for the jury
to resolve on whether evidence was obtained illegally and the jury was not
instructed pursuant to article 38.23.  Thus, any misstatements regarding
article 38.23 and any comments questioning the merits of a potential article
38.23 claim were rendered harmless.  See Williams v. State, 622 S.W.2d
116, 119 (Tex. Crim. App. 1981) (holding trial court=s remarks that, at worst, misled
prospective jurors on standard for determining whether a statement was
voluntary were rendered harmless because no issue was raised during trial
regarding the voluntariness of defendant=s confession).  We overrule appellant=s second issue.

IV.  Challenge for Cause

In his
third issue, appellant contends the trial court erred by denying his challenge
for cause to a venireperson who was allegedly biased against the law allowing
probation as a possible punishment in this case.  See Tex. Code Crim. Proc. Ann. art.
35.16(c)(2) (Vernon Supp. 2005) (allowing defendant to challenge a prospective
juror for cause on the ground that he is biased against the law applicable to
punishment for the offense).  The State responds that appellant did not
preserve error on this complaint.  We agree.  

To
preserve error on a trial court=s denial of a challenge for cause, an appellant must
demonstrate the following on the record: (1) he asserted a clear and specific
challenge for cause; (2) he used a peremptory challenge on the complained‑of
venireperson; (3) all his peremptory challenges were exhausted; (4) his request
for additional strikes was denied; and (5) an objectionable juror sat on the
jury.  Sells v. State, 121 S.W.3d 748, 758 (Tex. Crim. App. 2003); Feldman
v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). 








Here,
appellant asserted a challenge for cause to the venireperson at issue and used
a peremptory strike against him.  After exhausting his peremptory strikes,
appellant filed a motion requesting additional peremptory strikes.  In the
motion, he identified three objectionable persons who purportedly would sit on
the jury unless he was given additional peremptory strikes.  Although two of
these persons did not sit on the jury, the third person did sit on the jury. 
The trial court denied the motion.  Thus, at that point, appellant had
satisfied the requisites to preserve error with respect to his challenge for
cause.

However,
after the trial court denied appellant=s motion, it seated the jurors.  The
trial court then asked, AIs there any objection to the composition of the jury?@  Appellant=s counsel replied, ANone, your Honor.@  After reading the name of the
alternate juror, the trial court again asked, ANow that we have 12 jurors and the
alternate seated, is there any objection to the composition of the jury?@  Appellant=s counsel again replied,  ANone, your Honor.@  Therefore, appellant twice
affirmatively stated that he had no objection to the composition of the jury.  








The
State does not cite, and we have not found, any published cases addressing
whether a defendant who initially satisfies the requisites to preserve error on
the denial of a challenge for cause nevertheless waives error by later
affirmatively stating he has no objection to the composition of the jury.  In
an unpublished opinion, the Dallas Court of Appeals found that a defendant
affirmatively waived error in a substantially similar situation.  See
Canales v. State, No. 05‑94‑01741‑CR, 1996 WL 547955, at
*4 (Tex. App.CDallas Sept. 17, 1996, no pet.) (not designated for publication).  The
court cited the rule applicable when a defendant affirmatively asserts he has Ano objection@ to the admission of evidence during
trial despite having earlier moved to suppress the evidence.  Id.
(citing Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988)).  When
a pretrial motion to suppress evidence is overruled, the defendant need not
subsequently object at trial to the same evidence to preserve error.  See
Moraguez v. State, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986); Mikel
v. State, 167 S.W.3d 556, 558 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
However, when the defendant affirmatively asserts during trial that he has Ano objection@ to the admission of evidence at
issue, he waives any error in its admission, despite the pretrial ruling.  Moraguez,
701 S.W.2d at 904; Dean, 749 S.W.2d at 83; Mikel, 167 S.W.3d at
558.

We agree
that a similar rule should apply here.  Because appellant identified an
objectionable juror in his request for additional peremptory strikes, we
conclude he was not required to object again to the composition of the jury
when it was seated.  However, by affirmatively stating he had no objection to
the composition of the jury, appellant negated any objection, effectively
waiving any complaint he had preserved.  He affirmatively represented that no
objectionable juror sat on the jury because he had to use a peremptory strike
against the venireperson at issue.  Accordingly, we hold that he waived any
error in the denial of his challenge for cause.  See Canales, 1996 WL
547955, at *4; see also Franklin v. State, No.  01-87-00097-CR,
1988 WL 139732, at *2 (Tex. App.CHouston [1st Dist.] Dec. 22, 1988, no
pet.) (not designated for publication) (concluding appellants waived any error
in denial of challenges for cause by stating they had no objection to the jury
composition). 

Moreover,
when a trial court erroneously denies a challenge for cause, a defendant is
harmed if he is forced to accept an objectionable juror because he had to use a
peremptory strike against the venireperson at issue, had no remaining strikes,
and was denied an additional strike.  See Escamilla v. State, 143 S.W.3d
814, 821 (Tex. Crim. App. 2004).  Therefore, appellant negated any harm
resulting from the denial of his challenge for cause by affirmatively
representing that no objectionable juror sat on the jury.  We overrule his
third issue.

V.  Motion for Judgment of Acquittal








In his
fourth issue, appellant claims the trial court erred by denying his motion for
judgment of acquittal after the State rested its case because the evidence was
insufficient to prove his guilt.  We treat a challenge to the denial of a
motion for judgment of acquittal as a challenge to the legal sufficiency of the
evidence.  Cuddy v. State, 107 S.W.3d 92, 94 (Tex. App.CTexarkana 2003, no pet.);  see
Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).  In considering
a legal-sufficiency challenge, we review all the evidence in the light most
favorable to the finding to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  This standard of
review Agives full play to the jury=s responsibility fairly to resolve
conflicts in the evidence, to weigh the evidence, and to draw reasonable
inferences from the evidence.@  Threadgill v. State, 146 S.W.3d 654, 663 (Tex. Crim.
App. 2004).

A person
commits murder if he intentionally or knowingly causes the death of an
individual or intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual.  Tex. Pen. Code Ann. ' 19.02(b)(1), (2) (Vernon 2003). 
Appellant asserts the evidence is legally insufficient to prove he murdered
Bonilla because it was all circumstantial.  However, circumstantial evidence
may be sufficient to support a conviction.  See Kutzner v. State,
994 S.W.2d 180, 184 (Tex. Crim. App. 1999); see also Conner v. State,
67 S.W.3d 192, 197 (Tex. Crim. App. 2001) (stating a conclusion of guilt may
rest on the cumulative strength of all incriminating circumstances).  For the
purposes of proving guilt beyond a reasonable doubt, circumstantial and direct
evidence are equally probative.  See Roberson v. State, 16 S.W.3d
156, 167 (Tex. App.CAustin 2000, pet. ref=d) (citing McGee v. State, 774
S.W.2d 229, 238 (Tex. Crim. App. 1989)).  We apply the same legal-sufficiency
standard of review to cases involving direct or circumstantial evidence.  Kutzner,
994 S.W.2d at 184.








The
evidence shows that Bonilla was stabbed repeatedly during a violent struggle
inside the Bookman home, and his body was then dragged outside to the area
behind the shed.  The evidence further indicates that Bonilla was killed
shortly after 7:00 a.m.Cwhen appellant was the only resident home.  Later in the day,
fresh cuts were observed on appellant=s hands.  The cuts were consistent
with those that would result from a knife slipping while being held.  Appellant
gave no explanation for the cuts when confronted by his stepfather.  Appellant 
also had blood on various parts of his body without corresponding injuries. 
Consequently, the jury could have rationally inferred that appellant was
involved in a struggle and stabbed Bonilla.

In
addition, appellant=s mother found him cleaning blood in the Bookman home in the
afternoon.  The officers determined someone had engaged in a considerable
effort to clean blood and discard bloody items.  Thus, the jury could have
reasonably inferred appellant had been cleaning blood for some time in an
attempt to dispose of evidence.  Moreover, because bloody sandals, the broken
knife handle, Bonilla=s shoes and eyeglasses, bloody clothes, and a bloody towel
were found in appellant=s bedroom, the jury could have reasonably inferred he tried
to hide these items.  These attempts to dispose of and hide evidence indicate Aconsciousness of guilt.@  See Torres v. State, 794
S.W.2d 596, 598 (Tex. App.CAustin 1990, no pet.) (stating A>consciousness of guilt= is perhaps one of the strongest
kinds of evidence of guilt.@); see also Wells v. State, 578 S.W.2d 118, 119 (Tex.
Crim. App. 1979) (recognizing attempts to conceal incriminating evidence are
indicative of guilt).

The
evidence belies appellant=s claim that a burglary was committed while he was out
looking for a job.  The front window had been broken from the inside, there
were no signs of forced entry, and no property was missing.  The jury 
rationally could have concluded that a burglar who committed murder would not
take time to clean the home, hide evidence in the home, and drag the body
behind a shed.  The jury also rationally could have disbelieved that a burglar
would randomly choose appellant=s bedroom to hide evidence.  Further, the jury reasonably
could have questioned why Bonilla would have ended up inside the Bookman home
entangled in a burglary when none of the residents were home.  From the
overwhelming  evidence negating a burglary, the jury rationally could have
concluded that Bonilla was not killed by a burglar.  The jury also reasonably
could have concluded that appellant was involved in the murder because he
falsely claimed a burglary had occurred.








In sum,
after reviewing all the evidence in the light most favorable to the finding, we
conclude a rational jury could have found beyond a reasonable doubt that
appellant murdered Bonilla.  We overrule appellant=s fourth issue.  

VI.  Evidentiary Rulings During Trial

In his
fifth, sixth, and seventh issues, appellant challenges several evidentiary
rulings during trial.  We review a trial court=s decision to admit or exclude
evidence for abuse of discretion.  Torres v. State, 71 S.W.3d 758, 760
(Tex. Crim. App. 2002).  We will not disturb the trial court=s ruling unless it falls outside the
zone of reasonable disagreement.  Id.

A.        Exclusion of AImpermissible Character Evidence@

In his
fifth issue, appellant contends the trial court erred by excluding testimony as
Aimpermissible character evidence.@  During the State=s direct examination, Mr. Bookman
testified about appellant=s response when Mr. Bookman asked how he got the cuts on his
hands:

Q.        What did he tell you?

A.        He really didn=t say.  He was just being typical
Lamont, just - - you know, it=s kind of hard to get across to him sometime, and he was just
real nervous and everything.

During cross-examination,
appellant=s counsel attempted to expand on Bookman=s testimony:

Q.        What did you mean by, He was just being typical Lamont?

A.        Well, Lamont=s - - Lamont, he=s a loving person.

After
Bookman answered, the State objected to Aimproper character testimony of this
defendant.@  In response, appellant generally argued he was entitled to explore what
Abeing typical Lamont@ meant because the State had invited
this testimony.  The trial court instructed that appellant=s counsel could ask about appellant=s demeanor at the scene, but his
question was so broad that it invited impermissible character evidence about
appellant.








On
appeal, appellant suggests he did not offer the testimony as character
evidence; rather, the testimony was relevant to prove he was incompetent to
stand trial.  Regardless of appellant=s reason for offering the testimony,
the trial court subsequently allowed all the testimony offered by appellant
notwithstanding its ruling.  When appellant resumed his cross-examination of
Bookman, appellant fully explored what Abeing typical Lamont@ meant, despite objections to some of
his questions.  In particular, appellant elicited Bookman=s testimony that Abeing typical Lamont@ meant appellant is quiet, difficult
to communicate with, Aslow,@ and Aidolizes@ Janet Jackson.  Appellant then concluded his
cross-examination and did not attempt to offer any additional testimony from
Bookman.  Thus, the trial court did not exclude the testimony offered by
appellant.  Finally, appellant did not make an offer of proof regarding any
additional testimony he wished to elicit from Bookman that was purportedly
excluded.  Therefore, to the extent appellant contends he was precluded from
offering any additional testimony, he has waived his complaint.  See Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.2.[8]  
We overrule appellant=s fifth issue.

B.        Admission of Photographs








In his
sixth issue, appellant contends the trial court violated Texas Rule of Evidence
403 by admitting six photographs of Bonilla=s body taken by investigating police
officers at the scene of the murder.  Rule 403 provides that relevant evidence
may be excluded if Aits probative value is substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.@  Tex.
R. Evid. 403.  Appellant contends the photographs were inadmissible
under Rule 403 because their probative value was substantially outweighed by
the danger of unfair prejudice and they were Aduplicative@ of other photographs that were
admitted.

1.         AUnfair Prejudice@ Objection

A court
should consider the following non-exclusive factors when deciding whether the
probative value of photographs is substantially outweighed by the danger of
unfair prejudice: the number of photographs, the size, the detail, whether they
are in color or are black and white, whether they are gruesome, whether they
are close‑ups, and whether the body is clothed or naked.  Hayes v.
State, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); Whitmire v. State,
183 S.W.3d 522, 531 (Tex. App.CHouston [14th Dist.] 2006, no pet.).  When a defendant
objects to photographs under Rule 403, the trial court must conduct this Abalancing test.@  See Williams v. State, 958
S.W.2d 186, 195 (Tex. Crim. App. 1997);  Santellan v. State, 939 S.W.2d
155, 173 (Tex. Crim. App. 1997).

First,
appellant asserts that the trial court did not conduct the Abalancing test.@  The trial court did not state on
the record that it had conducted the Abalancing test.@  However, the trial court overruled
appellant=s Rule 403 objection.  Therefore, we presume that it conducted the Abalancing test,@ and we will review its ruling.  See
Williams, 958 S.W.2d at 195B96 (holding trial court is presumed to have engaged in the
required balancing test once Rule 403 is invoked); Santellan, 939 S.W.2d
at 173.

The
relevant factors weigh in favor of the trial court=s admission of the photographs. There
are six photographs at issueCState=s Exhibits 90B95.  They are 8'x10' photographs, and only black and white
copies are included in the appellate record.  








Five of
the photographs are close-ups of various portions of Bonilla=s legs and feet.  These photographs
depict abrasions/lacerations, and one photograph shows blood on the bottom of
the right foot.  An officer testified that the blood on the foot was consistent
with Bonilla having walked in blood, and some of the abrasions/lacerations were
probably consistent with the body having been dragged.  Therefore, the
photographs were probative because they supported the State=s theory that Bonilla was killed
inside the houseCwhere blood was found on the floor, and his body was then
dragged behind the shed. Although the photographs depict abrasions/lacerations,
they are not particularly gruesome.  We note that two of the photographs show
concentrations of ants around the wounds.[9] 
Although the presence of ants on the body may be somewhat disturbing, the
photographs are no more gruesome than the facts of the offense itself.  Ants
infesting wounds would be expected when a bloody, dead body has been left
outside for some time.  See Sonnier v. State, 913 S.W.2d 511, 519
(Tex. Crim. App. 1995) (recognizing trial court does not err merely by
admitting gruesome photographs when the gruesomeness Aemanates from nothing more than what
the defendant has himself done.@).

The
other photograph at issue depicts the body on a backboard after it had been
removed from behind the shed to be taken by the medical examiner.  The
photograph is probative because it depicts the general condition of the body at
the scene.  This photograph is not particularly gruesome.  Based on the angle
from which it was taken, the only visible wound, at least on the black and
white copy, is a laceration to the face.[10] 
However, this laceration is not the focal point of the photograph because it
shows more of the body than the face.  Nevertheless, to the extent the
photograph is gruesome, again, it is no more gruesome than the facts of the
offense.  See id.  

In sum,
we conclude the trial court did not abuse its discretion by finding the
probative value of the photographs was not substantially outweighed by the
danger of unfair prejudice.








2.         ADuplicative@ Objection

At
trial, appellant argued the photographs at issue were Aduplicative@ of other photographsCExhibits 87, 88, 89, and 96. 
However, Rule 403 does not prohibit cumulative evidence; rather it requires
exclusion if the probative value is substantially outweighed by the Aneedless presentation@ of cumulative evidence.  See Tex. R. Evid. 403.

Exhibits
87, 88, and 89 depict various parts of the body as it lay behind the shed. 
Exhibits 87 shows most of the body, including the legs.  Exhibit 88 shows
mostly the upper body, including the head and the arms above the head.  Exhibit
89 focuses on the head and the arms above the head.  Exhibit 96 was taken after
the body was removed from behind the shed and focuses on a wound to the right
arm.

In
contrast, five of the photographs at issue are close-ups of the legs.  They are
cumulative of Exhibit 87 to the extent they show wounds to the legs.  However,
they are not needlessly cumulative of Exhibit 87 because they allowed the jury
to see the abrasions/lacerations to the legs in greater detail.

 As we
have discussed, one photograph at issue does show more of the body.  However,
unlike Exhibits 87, 88, and 89, this photograph was taken after the body was
removed from behind the shed.  Therefore, this photograph is not needlessly
cumulative of Exhibits 87, 88, and 89.  This photograph is cumulative of
Exhibit 96 to the extent it shows the right arm.  However,  this photograph is
not needlessly cumulative of Exhibit 96 because  Exhibit 96 focuses on the
wound to the right arm while the wound is hardly visible on the black and white
copy of the photograph at issue.

Accordingly,
the trial court did not abuse its discretion by determining that the probative
value of the photographs at issue was not substantially outweighed by the Aneedless presentation@ of cumulative evidence.  We overrule
appellant=s sixth issue.








C.        Exclusion of Appellant=s Statement

In his
seventh issue, appellant contends the trial court erred by excluding his
statement during the guilt/innocence phase and prohibiting him from
cross-examining witnesses regarding its substance.  This portion of appellant=s brief is puzzling in consideration
of his first issue that the trial court erred by denying his motion to suppress
and purportedly admitting the statement.[11] 
Nonetheless, appellant made, and the trial court overruled, several requests
for permission to offer the statement and/or cross-examine Officers Mosqueda
and Mares about its substance.[12]  On appeal,
appellant makes a bare assertion that the statement was relevant to his
competency to stand trial and the Avoluntariness of the statement@ and was admissible under Texas Rules
of Evidence 803 and 107.

Appellant
has waived his contention that the statement was relevant to his competency to
stand trial because he failed to raise it in the trial court.  See Tex. R. App. P. 33.1(a).  Appellant
makes no argument to support his contention that the statement was relevant to
the Avoluntariness of the statement.@  He merely cites his request to
cross-examine Officer Mosqueda regarding the statement on the ground it was Athe best evidence@ that he was incompetent to waive his
Miranda rights and that the statement was involuntary.  Nevertheless,
this contention clearly lacks merit.  In essence, appellant sought to admit the
statement to show that it was inadmissible when it had not been admitted in the
first place.  The trial court properly rejected this request.[13]








In Texas
Rule of Evidence 803, there are twenty-four exceptions to the rule against
hearsay, and appellant does not cite a specific exception.  See Tex. R. Evid. 803.  It is not
reasonable to expect this court to guess which exception appellant relies on or
to analyze all twenty-four exceptions.  Finally, appellant makes no argument to
demonstrate why the statement was allegedly admissible under Rule 107Cthe ARule of Optional Completeness.@  See Tex. R. Evid. 107.  He merely cites his request to
cross-examine Officer Mosqueda regarding the statement pursuant to Rule 107
because the Adoor had been opened.@  Although he generally cites a case concerning Rule 107, he
does not show how the State allegedly opened the door and invoked application
of Rule 107 in this case.  Because his Rule 803 and 107 contentions are
inadequately briefed, he has waived appellate review.  See Tex. R. App. P. 38.1(h); Torres v.
State, 979 S.W.2d 668, 674 (Tex. App.CSan Antonio 1998, no pet.) (finding
appellant waived appellate review because court was Aleft to guess as to the precise
nature@ of the complaint).  We overrule
appellant=s seventh issue.

The
judgment of the trial court is affirmed.

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed September 5, 2006.

Panel consists of Justices Hudson,
Frost, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  At the suppression hearing, the officers testified
that appellant told Officer Mosqueda an untrue Astory@ but implicated himself in Bonilla=s death when Officer Mares continued the interview. 
The officers did not otherwise testify regarding the details of appellant=s statement.  Although the statement was admitted at
the hearing, a copy is not included in the appellate record, so we do not know
the exact contents.  However, the contents are not necessary to our disposition
of the appellate issues.  Nonetheless, according to Officer Mares=s written summary, which was admitted at the hearing,
appellant confessed that he called Bonilla over to his house, killed Bonilla
because a voice told him to do so, dragged the body behind the shed, and
cleaned the blood in the house.





[2]  The statement was admitted during the punishment
phase only, but appellant does not challenge admission of the statement during
the punishment phase or the jury=s
punishment determination.  Instead, he asserts that we should consider whether
admission of the statement contributed to the jury=s guilty verdict.





[3]  Instead, appellant generally argues that a trial
court must give a jury instruction pursuant to article 38.23 when a factual
dispute arises on whether evidence was obtained illegally.  However, he does
not contend in this issue that the trial court erred by failing to give a jury
instruction pursuant to article 38.23.  Therefore, this argument fails to
inform us how the trial court allegedly misstated the law regarding article
38.23 or how appellant was harmed by any misstatements.  





[4]  Even if no objection is asserted, we may take notice
of fundamental errorCerror causing such egregious harm that a defendant has
not had a fair and impartial trial.  See Tex. R. Evid. 103(d); Ganther v. State, 187 S.W.3d
641, 650 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d) (citing Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1984)); Villareal v. State, 116 S.W.3d 74, 85 (Tex.
App.CHouston [14th Dist.] 2001, no pet.).  In Blue v.
State, the Court of Criminal Appeals found that a defendant did not waive
error by failing to object to the trial court=s improper comments during voir dire because the comments tainted the
defendant=s presumption of innocence in front of the prospective
jurors and constituted fundamental error.  41 S.W.3d 129, 132B33 (Tex. Crim. App. 2000).  Subsequently, we have
noted that Blue is not binding precedent because it was a plurality
opinion.  See Ganther, 187 S.W.3d at 650;  Murchison v. State,
93 S.W.3d 239, 262 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).  Even if we were bound to follow Blue,
here, the trial court=s statements did not cause any harm, much less
egregious harm.





[5]  The trial court stated, Ait . . . is a law that gives the jury one more - - one
last opportunity to make a decision that is ordinarily the court=s@ and  Athe law says, Give them one last chance to make this
decision; and if they decide it should be thrown out, they throw it out.@





[6]  The trial court gave a hypothetical in which a
factual dispute was raised on whether the police illegally obtained the
evidence showing that a defendant committed burglary.  A prospective juror
asked whether Atwo wrongs@
would make Aone right@ if
the evidence was obtained illegally.  The trial court responded, AIt=s not a matter
of whether it makes anything right.  It=s
two wrongs.@





[7]  As the trial court finished explaining article
38.23, it stated, AIt does not come up in every case.  It=s just like the insanity issue, like the self-defense
issue, you may not hear another word after this, I hope - - we are all tired of
talking about it - - on this issue of disregarding evidence or on insanity or
on self-defense, and unless I instruct you in the charge to make that
determination, it is not something for you to resurrect on your own and try to
figure it out.@ 





[8]  Before calling his own witnesses, appellant tried to
make a bill of exception to establish that he would have asked Bookman whether
appellant had a Agood or bad reputation for violence.@  The trial court responded that appellant had not
posed that question to Bookman when the trial court sustained the State=s objection, and it would allow that question. 
Subsequently, both Mr. and Mrs. Bookman testified that appellant had a
reputation for being a peaceful, non-violent, law-abiding citizen. 
Consequently, appellant did not make a bill of exception regarding any
proffered testimony that was excluded.





[9]  On the black and white copies, it is not readily
apparent these Aconcentrations@
are ants without reading the police officer=s
testimony.  We assume the ants are more apparent in the color photographs
presumably admitted at trial.





[10]  The copy is a poor reproduction of the original
photograph.  If appellant believed the colors in the actual photographs would
have affected our assessment of prejudice, he should have ensured the original
photographs or color photocopies were included in the record.  See Williams,
958 S.W.2d at 196 n.10. 





[11]  The trial court also expressed confusion that
appellant wanted to admit a statement it had sought to suppress.





[12]  The trial court had granted the State=s motion in limine to prohibit appellant from
questioning witnesses about the substance of the statement unless the State
first offered it into evidence.  





[13]  The trial court recognized this argument had no
merit when it stated, AOf course, if they are not going to offer the
statement, there is not going to be any evidence for you to suggest [the jury]
should disregard because it wasn=t
voluntary . . . . @  The trial court also asked, AYou want to offer it and then suggest they should
disregard it?@