Affirmed and Memorandum Majority and Concurring Opinions filed February
3, 2009








 

Affirmed and Memorandum Majority and Concurring Opinions filed
February 3, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00756-CR

____________

 

DERRICK DEWAYNE HENDERSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause No. 1128676

 



 

M E M O R A N D U M   M A J O R I T Y   O P I N I O N








A jury found appellant, Derrick Dewayne Henderson, guilty
of aggravated kidnapping and assessed punishment at thirty-five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  See
Tex. Penal Code Ann. ' 20.04 (Vernon 2003).  In five issues,
appellant argues (1) the evidence is legally insufficient to support his
conviction, (2) the evidence is factually insufficient to support his
conviction, (3) the trial court=s allegedly improper comments violated his
due process rights, (4) the trial court erred in admitting improperly
authenticated business records and improper hearsay testimony, and (5) he did
not waive his first four issues by taking the stand in the punishment phase and
confessing to the crime.  We affirm.

Factual and Procedural Background

The plan to attack complainant, Michael Duke, originated in
March, 2006.  The plan was to go to Houston to intimidate Mr. Duke, who
allegedly owed money to Ryan Hudnall=s brother, Rodney
Hudnall.  During this effort to intimidate Mr. Duke, appellant was to be
accompanied by Ryan Hudnall and Clayton Aaron Adams.  The men planned to dress
as law enforcement officers and Aarrest@ Mr. Duke at
gunpoint.  On March 31, 2006, the three men left for Houston from Kansas City,
Missouri.  On the trip to Houston, they were stopped for a traffic violation in
Big Cabin, Oklahoma.  During this traffic stop, appellant was identified as
driving the vehicle through eyewitness testimony and police videotape.  Because
of a probation violation, Clayton Adams abandoned the plan and returned to
Kansas City.  On the morning of April 1, 2006, Ryan Hudnall rented a vehicle
from Hertz in Houston, Texas.  That evening, appellant stayed at a Houston area
motel.

On April 2, 2006, two armed men dressed as law enforcement
officers, wearing masks, approached Mr. Duke in the parking lot of his place of
work, an electronics store in Pasadena, Texas.  The two men ordered Mr. Duke on
to the ground to place him under arrest.  The men tied Mr. Duke=s hands behind his
back and proceeded to force him into the back of their vehicle.  Mr. Duke
resisted because of the men=s failure to show identification, inciting
the men to strike Mr. Duke.  During the struggle, Thomas Moore, a witness, and
John Eilers, the store=s security officer, arrived at the scene. 
The assailants then dropped Mr. Duke on the ground, got in their vehicle, and
rapidly drove away.  Mr. Duke suffered many injuries as a result of the attack.








Officer Eilers observed the license plate number of the
assailants= vehicle before it drove away, and broadcast the car=s description and
license plate number over the police radio.  The Pasadena Police Department
discovered a red Ford Taurus missing a license plate in a parking lot near the
scene of the offense.  The Taurus= missing license
plate matched the one Officer Eilers reported on the assailants= vehicle. 
Additionally, the assailants= vehicle matched the description of the
vehicle rented by Ryan Hudnall the prior day.  Ryan Hudnall returned the rented
vehicle to Hertz on April 2, 2006, the day following the attack on Michael
Duke.

The detective assigned to the case was Detective Isaac
Villarreal.  Appellant was first identified as a potential suspect when
Detective Villarreal spoke with Ryan Hudnall=s estranged wife. 
During a search of Ryan Hudnall=s home, the police seized a cellular
telephone.  After examining Ryan Hudnall=s cellular
telephone, Detective Villarreal found the appellant=s name and phone
number stored in the phone.  Additionally, after examining Mr. Hudnall=s phone records,
investigators were able to trace Mr. Hudnall=s phone from
Kansas City two days prior to the offense, to Big Cabin, Oklahoma the day of
the traffic stop, to Houston, Texas on the morning of April 1, 2006.  The phone
was used near the scene of the offense close to the time of the attack, and
then used again in the Kansas City area on April 3, 2006.  Detective Villarreal
was also able to determine appellant stayed at a Houston area motel the evening
of April 1, 2006 by interviewing the motel=s manager, who
identified appellant in a photo array, and by examining the motel=s records, which
revealed that appellant checked into the motel using his real name.  After
returning to Kansas City, appellant spoke to Clayton Adams, who asked how their
plan had worked.  According to Clayton Adams=s testimony,
appellant responded that things had not gone according to their plan.  In
addition, Detective Villarreal determined appellant matched the general
description the witnesses gave of one of the assailants at the scene of the
offense.








Appellant was subsequently charged with felony aggravated
kidnapping, and in one enhancement paragraph, was alleged to have previously
committed aggravated battery.  The jury found appellant guilty of aggravated
kidnapping and found the enhancement paragraph to be true.  Additionally, the
jury made a finding that appellant did not voluntarily release the complainant
in a safe place.  The jury assessed appellant=s punishment at
thirty-five years= confinement in the Institutional Division
of the Texas Department of Criminal Justice.

Discussion

A.      Is the
evidence legally and factually sufficient?

In appellant=s third and fourth
issues, he argues the evidence is legally and factually insufficient to support
the verdict.

1.       Standard
of Review

In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 2789, 61 L.Ed.2d 560 (1979); Salinas v. State, 163 S.W.3d 734, 737
(Tex. Crim. App. 2005).  The jury, as the sole judge of the credibility of the
witnesses, is free to believe or disbelieve all or part of a witness= testimony.  Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We do not engage in
a second evaluation of the weight and credibility of the evidence, but only
ensure the jury reached a rational decision.  Muniz v. State, 851 S.W.2d
238, 246 (Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784
(Tex. App.CHouston [14th Dist.] 2005, pet ref=d).








In a factual sufficiency review, we consider all the
evidence in a neutral light.  Prible v. State, 175 S.W.3d 724, 730-31
(Tex. Crim. App. 2005).  The evidence may be factually  insufficient in two
ways.  Id. at 731.  First, when considered by itself, evidence
supporting the verdict may be so weak the verdict is clearly wrong and
manifestly unjust.  Id.  Second, where the evidence both supports and
contradicts the verdict, the contrary evidence may be strong enough the
beyond-a-reasonable-doubt standard could not have been met.  Id.  In conducting
a factual sufficiency review, we must employ appropriate deference so we do not
substitute our judgment for that of the fact finder.  Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996).  Our analysis must consider the
evidence appellant claims is most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

2.       Analysis

A person commits the offense of aggravated kidnapping if he
intentionally or knowingly abducts another person and uses or exhibits a deadly
weapon during the commission of the offense.  Tex. Penal Code Ann. ' 20.04(b).  The
evidence presented established appellant participated in a plan with Ryan
Hudnall to travel to Houston, impersonate law enforcement officers, and
intimidate the complainant.  Additional evidence showed appellant traveled to
Houston, was stopped along the way in Oklahoma for a traffic citation, and
registered as a guest at a motel in the Houston area the day prior to the
attack.  Furthermore, Ryan Hudnall rented a vehicle which matched the
description of the vehicle identified at the scene of the offense, the two men
impersonating police officers who abducted the complainant at gunpoint matched
the general description of appellant and Ryan Hudnall.  Also, Ryan Hudnall=s cellular
telephone was tracked from Kansas City, Missouri to Houston, Texas prior to the
offense, and then tracked to the scene of the offense on the day of the attack,
and then back to Kansas City the following day.

Appellant argues the evidence indicating he was the
perpetrator is insufficient to support the verdict because it is based only on
circumstantial evidence and the testimony of an unnamed convicted felon. 
Appellant=s argument, however, is without merit.  Circumstantial
evidence alone can be sufficient to establish guilt.  Hooper v. State,
214 S.W.3d 9, 14-15 (Tex. Crim. App. 2007).  Furthermore, the jury is the sole
judge of the facts, the credibility of the witnesses, and the weight to be
given the evidence.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App.
2000).  The jury may believe or disbelieve all or part of any witness=s testimony.  Jones,
984 S.W.2d at 258. 








Appellant also contends that without the allegedly improper
hearsay testimony[1],
the evidence is legally and factually insufficient to uphold the verdict of
guilt.  Appellant=s contention that this court should not
consider the allegedly inadmissible hearsay when conducting its legal and
factual sufficiency review is incorrect.  An appellate court must consider all
evidence actually admitted at trial in its sufficiency review and give it
whatever weight and probative value it could rationally convey to a jury.  Moff
v. State, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).  Thus, even if the
trial court erred in admitting the alleged hearsay testimony, we must consider
the testimony in assessing the sufficiency of the evidence.  Id. at
489-90.

The only contrary evidence appellant provides is the
complainant=s inability to identify appellant=s height with
specificity.  Michael Duke testified the assailant was Aa couple inches
taller@ than him.  Mr.
Duke measures at 5'11" and appellant at 6'7".  However, there are
varying accounts of appellant=s height by other witnesses.  For
instance, Thomas Moore testified appellant was perhaps taller than 6'3". 
It is not the appellate court=s responsibility to resolve all conflicts
that appear in the record.  See Bowden v. State, 628 S.W.2d 782, 784
(Tex. Crim. App. 1982).  In reviewing the factual sufficiency of the judgment
below, this Court should be ever mindful of the fact finder=s role in
assessing the witnesses= credibility and resolving conflicts in
the evidence.  See Bonham v. State, 680 S.W.2d 815, 819 (Tex. Crim. App.
1984) (examining jury=s role in evaluating witness= credibility); Bowden,
628 S.W.2d at 784 (examining jury=s role in
resolving conflicts).  In this case, the Court has the responsibility of
reviewing the facts only to ensure that the verdict is not so against the great
weight of the evidence as to be manifestly unjust.  See Prible,
175 S.W.3d at 731.  After viewing all of the evidence, we cannot say the jury=s determination
that appellant was correctly identified as the assailant is against the great
weight of the evidence.  See id. 








Viewing the evidence in the light most favorable to the
verdict, we hold the evidence is legally sufficient to support appellant=s conviction for
aggravated kidnapping because any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  See Salinas,
163 S.W.3d at 737.  Viewing the evidence in a neutral light, we hold the
evidence supporting the verdict is neither so weak the verdict is clearly wrong
and manifestly unjust, nor is the contrary evidence so strong the
beyond-a-reasonable-doubt standard could not have been met.  See Prible,
175 S.W.3d at 730-31.  Thus, the evidence is factually sufficient to support
appellant=s conviction.  We overrule appellant=s first two
issues.

B.      Did the
trial court=s conduct violate appellant=s constitutional
rights?

In appellant=s first issue, he
contends his Aconstitutional rights to due process and to the
effective assistance of counsel were violated by numerous judicial abuses of
discretion in the presence of the jury that cast defense counsel in an
extremely unfavorable light, constituted improper and unconstitutional comments
on the weight of the evidence and prejudiced the jury against appellant, his
counsel and the case for the defense, thereby preventing appellant from
presenting his case and from receiving a fair trial.@[2]  Appellant
directs this court=s attention to a number of excerpts in the
reporter=s record, which he
presents in two parts.  In part one, appellant contends his constitutional
rights to due process were violated by improper judicial comments in the
presence of the jury that prevented appellant from receiving a fair trial.  In
part two, appellant contends he was denied due process when the trial judge
allegedly intimidated the defense witness into not testifying.  We hold
appellant has waived error as to both parts of issue one.

1.       Standard
of Review








Generally, to preserve error, a defendant must make a
timely and specific objection.  Tex. R. App. P. 33.1.  Almost every right,
constitutional and statutory, may be waived by failure to object.  Smith v.
State, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986).  Absent an objection, a
defendant waives error unless the error is fundamentalB that is, the
error creates egregious harm.  Ganther v. State, 187 S.W.3d 641, 650
(Tex. App.CHouston [14th Dist.] 2006, pet. ref=d); see Tex.
R. Evid. 103(d); Villareal v. State, 116 S.W.3d 74, 85 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  Egregious harm is such harm that a defendant has not
had a fair and impartial trial.  Ganther, 187 S.W.3d at 650.  In this
case, since appellant failed to make timely and specific objections at trial,
the only way appellant=s claim survives on appeal is if the trial
court=s comments
constitute fundamental error.

2.       Analysis

a.       Were the
trial court=s allegedly
improper comments in the presence of the jury fundamental error?








Appellant directs us to twenty-eight instances in which the
trial court made comments which were allegedly prejudicial to the defense=s case thus
preventing appellant from receiving a fair trial.[3] 
The comments appellant complains of occurred during each phase of trial, from
voir dire through punishment.  Since appellant failed to object at trial, the
comments must rise to the level of fundamental error to be preserved for
appeal.








The United States Supreme Court has determined when certain
constitutional rights are violated fundamental error occurs.  Arizona v.
Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302
(1991); Williams v. State, 194 S.W.3d 568, 579 (Tex. App.CHouston [14th
Dist.] 2006), aff=d, 252 S.W.3d 353
(Tex. Crim. App. 2008).  The Court has defined such errors as Astructural defects
in the constitution of the trial mechanism.@  Fulminante,
499 U.S. at 309, 111 S.Ct. at 1265.  The Court has determined these fundamental
constitutional rights include the right to counsel, the right to an impartial
judge, the right to not have members of the defendant=s race unlawfully
excluded from a grand jury, the right to self-representation at trial, and the
right to a public trial.  Id. at 309-10, 111 S.Ct. at 1264-65; Williams,
194 S.W.3d at 579.  In addition to the fundamental errors established by the
United States Supreme Court, a plurality of the Texas Court of Criminal
Appeals, in Blue v. State, held another fundamental error of
constitutional dimension could exist if a trial judge makes a comment that
taints the presumption of innocence.  Blue v. State, 41 S.W.3d 129, 132
(Tex. Crim. App. 2000).  Appellant relies on Blue as the primary basis
for his argument that the trial court=s comments in this
case constitute fundamental error, therefore not requiring objection during
trial to preserve error.  Even if Blue were not a plurality opinion, and
were binding on this court, the trial court=s comments in this
case did not rise to such a level as to bear on the presumption of innocence or
vitiate the impartiality of the judge.[4] 
Here, the majority of the comments appellant complains of fall within the court=s broad discretion
to expedite and maintain control over the trial.  Jasper v. State, 61
S.W.3d 413, 421 (Tex. Crim. App. 2001).

After careful review of the record, we conclude appellant
failed to show the comments by the trial court constitute fundamental error in
this case.  Even if the trial court=s comments
constitute non-fundamental error, appellant failed to properly object during
trial.  Accordingly, appellant has waived his complaint.

b.       Did the
trial court commit fundamental error by the judge allegedly intimidating the
defense witness into not testifying in violation of appellant=s due process
rights?








In part two of his first issue, appellant contends he was
denied due process when the trial judge allegedly intimidated the defense
witness into not testifying.  Appellant, however, made no objection followed by
an offer of proof, and therefore preserved nothing for the appellate court to
consider.  Tex. R. App. P. 33.1; see Haliburton v. State, 80 S.W.3d 309,
315 (Tex. App.CFort Worth 2002, no pet.).  Appellant cites Webb v.
Texas for the proposition that threatening remarks of a trial judge which
drove a witness off the stand deprived the defendant of due process, therefore
making it a fundamental right not requiring objection to preserve error for
appellate review.  Webb v. Texas, 409 U.S. 95, 98, 93 S.Ct. 351, 353, 34
L.Ed.2d 330 (1972).  Appellant is correct that under certain circumstances, a
defendant=s due process rights may be infringed by threats of
intimidation that dissuade a witness not to testify.  See id. at 98, 93
S.Ct. at 353 (holding fundamental right was violated when trial judge=s emphatic remarks
prevented a witness from testifying).  However, we find Webb
inapplicable to the facts of this case.  In Webb, prior to the witness beginning
testimony, the trial judge singled out the witness for a Alengthy admonition
on the dangers of perjury.@  The reviewing court stated the fact the
witness had appeared in the court to testify, refusing to do so only after the
judge=s warning,
strongly suggested that the judge=s comments were
the cause of the witness= refusal.  Id. at 97, 93 S.Ct. at
353.  Here, the judge gave the defense witness a brief contempt warning,[5]
but only after the witness had testified at length for the defense.  Since we
find no fundamental error, appellant=s lack of
objection and offer of proof has waived the argument for appeal.

With nothing preserved for this court to consider, we
overrule appellant=s first issue.

C.      Did the
trial court err by admitting improperly authenticated business records and
improper hearsay testimony?

In part one of his second issue, appellant contends the
trial court erred in overruling his objections to State=s exhibits 68 and
69 on hearsay and authentication grounds.  The exhibits at issue here include
two sets of telephone records.  We hold the trial court properly admitted State=s exhibits 68 and
69 as self-authenticated business records.  See Tex. R. Evid.
902(10)(a).  In the second part of this issue, appellant contends the trial
court erred in overruling appellant=s objections to
hearsay testimony.  After reviewing the record, we hold the trial court did not
abuse its discretion in admitting the alleged improper hearsay testimony.

1.       Standard
of Review

Hearsay is a statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted.  Tex. R. Evid. 801(d).  Generally,
hearsay is not admissible.  Tex. R. Evid. 802.  For hearsay to be admissible,
it must fit into an exception provided by a statute or the Rules of Evidence.  Id. 
A statement not offered to prove the truth of the matter asserted is not
hearsay.  Martinez v. State, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000). 









We review the trial court=s evidentiary
ruling under an abuse of discretion standard.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The admissibility of an out-of-court
statement under the exceptions to the hearsay rule is within the trial court=s discretion.  Zuliani
v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  A trial court=s decision to
admit or exclude hearsay will not be reversed absent a clear abuse of this
discretion.  Id.  An abuse of discretion occurs only when the decision
was so clearly wrong as to lie outside that zone within which reasonable
persons might disagree.  Id.

2.       Analysis

a.       Did the
trial court abuse its discretion by admitting the telephone records in State=s exhibits 68 and
69 as self-authenticated business records?

Appellant argues State=s exhibits 68 and
69 were erroneously admitted because they violate the hearsay rule.  He
maintains that since the dates of the accompanying affidavits and the letter
accompanying the transmitted records were a year apart, the records lack
trustworthiness.  The State argues the trial court properly concluded the
telephone records in State=s exhibits 68 and 69 were trustworthy
because the State had established an adequate foundation for the admission of
those records as business records under the Texas Rules of Evidence.  We find
no merit in appellant=s argument and agree with the State.








Properly authenticated records of regularly conducted
business activity can be admitted into evidence as an exception to the hearsay
rule.  Tex. R. Evid. 806(6).  Under the provisions of Rule 902(10)(a), a party
may introduce business records into evidence without the testimony of a live
witness provided the records are accompanied by an affidavit.  Where a party
intends to introduce self-authenticated business records into evidence, it must
file the records and the affidavit with the clerk of the court at least
fourteen days before trial begins.  Tex. R. Evid. 902(10)(a).  Additionally,
the party filing the records and the affidavit must give other parties in the
case prompt notice of the filing.  Id.  There is no requirement in Rule
902(10)(a) that the affidavit must be dated the same as the letter accompanying
the corresponding business records.  See id.  Appellant also cited no
authority to support the proposition that the dates must correspond. 
Furthermore, there is nothing in the record that leads us to believe the
telephone records lacked authenticity or trustworthiness.  Accordingly, we conclude
the trial court did not abuse its discretion by admitting State=s exhibits 68 and
69.

b.       Did the
trial court abuse its discretion by admitting improper hearsay testimony?

In part two his second issue, appellant argues the trial
court improperly allowed the State to introduce inadmissible hearsay testimony
during the trial.  Appellant directs our attention to nine excerpts in the
record and claims the court improperly overruled appellant=s objections to
hearsay testimony.[6] 
Because of similarities in the alleged errors, we will address the hearsay
allegations in two groups.[7]

First, appellant complains of allegedly improper hearsay
testimony of Detective Isaac Villarreal.  Appellant contends much of the State=s case was
introduced through Detective Villarreal=s hearsay
testimony.  Appellant directs us to five excerpts in which he contends the
hearsay objections should have been sustained.  The State argues the objected
to testimony was not hearsay because an officer is permitted to testify to
general information he received that led the officer to identify the appellant
as a suspect during the officer=s investigation.  We agree with the State.








Statements offered for the purpose of explaining how a
defendant became a suspect and not for the truth of the matter asserted are not
hearsay.  Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995), cert.
denied, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995) (holding
appointment book and patient application form were not hearsay when tendered to
show how appellant became a suspect in the investigation).  Thus a police
officer may testify that after taking a witness= statement the
investigation focused on a particular suspect.  See Gholson v. State,
542 S.W.2d 395, 398 (Tex. Crim. App. 1976), cert. denied, 432 U.S. 911,
97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977) (holding A[a]n
extra-judicial statement or writing may be admitted as circumstantial evidence
from which an inference may be drawn, and not for the truth of the matter
stated therein, without violating the hearsay rule.@).  After
reviewing the excerpts in the record appellant brought to our attention, we
hold the alleged hearsay testimony of Detective Villarreal was offered to
explain how appellant became a suspect and not for the truth of the matter
asserted, and is therefore not hearsay.[8]

Second, two of appellant=s hearsay
objections were waived on appeal because the same evidence was introduced from
another source without objection from appellant.  The first instance concerns
Officer Eilers= testimony that A[a] citizen came
in and advised [him] there was a problem in the parking lot.@  Michael Duke and
Thomas Moore testified from personal knowledge that there was a problem in the
parking lot.  The second instance concerned testimony of Detective Villarreal
about determining Ryan Hudnall rented a car from Hertz that matched the
description of the car at the scene of the offense.  The Hertz rental car
agreement, State=s exhibit 76, which contains the same
information as Detective Villarreal=s testimony, was
admitted without appellant=s objection.








The applicable rule is when the accused in a criminal case
offers before the jury the same evidence as that to which he objected, or the
same evidence is introduced from another source, he is in no position to
complain on appeal.  Withers v. State, 642 S.W.2d 486, 487 (Tex. Crim.
App. 1982).  Assuming, arguendo, the complained of testimony was hearsay,
appellant cannot complain about it on appeal because the same evidence was
admitted in other parts of the trial without objection from appellant.  Appellant=s second issue is
overruled.

D.      Did
appellant waive his issues by taking the stand at the punishment stage and
confessing to the offense?

In his fifth issue[9],
appellant contends he did not waive issues one through four by taking the stand
at the punishment stage and confessing to the offense.  We need not address
this issue because, having addressed and overruled each of appellant=s other issues,
this final issue becomes moot.

Conclusion

Having overruled appellant=s first four issues and having
determined the fifth issue is moot, we affirm the trial court=s judgment.

 

                                                                             


/s/      John S. Anderson

Justice

 

 

Panel consists of
Justices Anderson, Frost, and Senior Justice Hudson.*

Do Not Publish C Tex. R. App. P. 47.2(b).








Appendix - AA@

 

A.        A
citizen came in and advised me there was a problem in the parking lot.

MR. CASTLEBERRY: Object to hearsay,
Your Honor.

MR. LEUCHTMAN: Judge, we=re talking for the purposes of
probable cause, not for the truth of the matter asserted.

THE COURT: That will be overruled.

 

Q.        Were
y=all discussing work, or were y=all discussing the lawsuit?  What
were y=all talking about? 

MR. CASTLEBERRY: Object to hearsay,
Your Honor.

THE COURT: That will be overruled. 
He may state what he said.

 

Q.        And
did that missing license place correspond with the license plate that had been
attached to the suspects= vehicle?

MR. CASTLEBERRY: Objection, Your
Honor.  There is no foundation for that.

THE COURT: That will be overruled.

THE WITNESS: I=m not sure quite how to answer that
question.

THE COURT: You may answer.

 

A.        The
name that I had was Derrick Henderson.

Q.        And
how were you able to - - how were you able to come up with that name?

A.        Derrick
Henderson?

Q.        Yes.

A.        I
had interviewed the - -

MR. CASTLEBERRY: Object to hearsay,
Your Honor.

THE COURT: That objection will be
overruled.








Q.        (By
Mr. Leuchtmann) How were you able to come up with the name of Derrick
Henderson?

A.        I
conducted an interview with Ryan Hundall=s estranged wife.

Q.        What
is her name?

A.        Rachel
Hudnall.

 

Q.        In
talking to Hertz, are you able to determine if Ryan Hudnall rented a car of
that description on the day of the offense?

MR. CASTLEBERRY: Object to hearsay,
Judge.

THE COURT: That will be overruled.

 

Q.        (By
Mr. Leuchtmann) You talked to Rachel Hudnall.  What else?

A.        Find
out that Ryan Hudnall has a friend by the name Derrick Henderson.

MR. CASTLEBERRY: Object to hearsay,
Your Honor.

THE COURT: Be overruled. 

Q.        (By
Mr. Leuchtmann) Okay.  You find out he has a friend named Derrick
Henderson, right?

A:        Yes,
sir.

 

A.        Well,
at the time, all I had was the name.  When I went to the motel room to check
the register for that day in question, I saw Derrick Henderson=s name on the register.

MR. CASTLEBERRY: Object hearsay,
Judge.

THE COURT: That will be overruled, to
that particular objection.

 

Q:        (By
Mr. Leuchtmann) Let=s move on to Big Cabin.  And what other evidence do you have
that links him to this crime?

A.        The
traffic stop that was initiated in Big Cabin.

MR. CASTLEBERRY: We object to that,
Judge, as hearsay.








THE COURT: That will be overruled.

 

A.        The
traffic stop in Big Cabin, which is videotaped, shows Derrick Henderson driving
Ryan Hudnall=s - - 

MR. CASTLEBERRY: Object to the video
game [sic] being talked about, Judge.  That=s hearsay.

THE COURT: Be overruled.

THE WITNESS: The videotape shows
Derrick Henderson driving a red pickup truck that was registered to Ryan
Hudnall.  The video also shows Derrick Henderson - -

MR. CASTLEBERRY: Your Honor, we
object.  There has been no evidence that Derrick Henderson was identified as
driving that truck on that videotape.

THE COURT: Be overruled.

 

Q.        (By
Mr. Leuchtmann) And the Visa records also show that he paid something to a
bond company on that same day, correct?

MR. CASTLEBERRY: Object to hearsay,
Judge.

THE COURT: That will be overruled.

THE
WITNESS: Yes.  The Visa records show that Ryan Hudnall used that Visa card to
post his bond.                  

 

 

 









[1]  See Discussion of Issue 4 below.





[2]  Appellant does not present an ineffective assistance
of counsel claim in his brief.  Even if he intended to do so, he waived the
issue by failing to present adequate argument and authorities as required by
Texas Rule of Appellate Procedure 38.1(h).  Cardenas v. State, 30 S.W.3d
384, 393 (Tex. Crim. App. 2000).  Furthermore, any intention of appellant to
contend the trial court=s evidentiary rulings were error was waived by failure
to adequately brief the issue.  See Tex. R. App. P. 38.1(h); Cardenas,
30 S.W.3d at 393.





[3]  Representative of the kind of complaints are the
following:                      

[DEFENSE COUNSEL]

Q:                                             I
believe you said you invested $400,000?

A:                                             Total,
from front to end, yes.

Q:                                             And
Ryan had put in $100,000?

A:                                             Ryan
had not invested anything.

Q:                                             I=m sorry.  Rodney?

[PROSECUTOR]:                       All this has been
asked and answered, Judge.

THE COURT:                            Move on,
counsel.

-------------------------------------------------------------------------------------------------------

Q:                                             All
right.  Was there disputes over how the business had been run?  Was he angry
about any of that?

[PROSECUTOR]:                       Objection, asked
and answered, relevance.

THE COURT:                            That will be
sustained.  This is a punishment hearing, [defense counsel].

[DEFENSE COUNSEL]: I=m just trying to establish the background.

THE COURT:                            Don=t argue with the Court. 

[DEFENSE COUNSEL]  Your Honor, excuse me.  We=re going to object to the element of confining.  That=s not actually included in the definition of
abduction, insofar as aggravated kidnapping.

THE COURT:                            It=s a nice speech.  It will be overruled. 

 





[4]  As Judge Keasler=s
concurring opinion in Blue indicates, the trial court=s remarks in Blue reasonably could be
interpreted as a predetermination of the defendant=s guilt, thus implicating the right to an impartial
trial court.  Murchison v. State, 93 S.W.3d 239, 262 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d); see Blue, 41 S.W.3d at 135-39 (Keasler, J.,
concurring).  The trial court=s comments in
the instant case are not of this nature, therefore Blue would not apply
to the facts of this case, even if it were binding precedent.





[5]  The court warned the witness outside the jury=s hearing of the following: ALet me tell you something.  If you do not follow the
Court=s instructions, the Court will hold you in contempt
and has the power to put you in jail for six months.  Do you understand that?@





[6]  See Appendix AA@.





[7]  Two of the excerpts appellant directs to our
attention are direct testimony and not hearsay.  In the first instance, the
State asked Mr. Duke to testify as to what he said in a phone conversation with
Mr. Hudnall=s brother, Rodney, in which he had personal
knowledge.  Second, the State asked Detective Villarreal if the Taurus= license plate corresponded with the one on the
suspect=s vehicle.  Again, Detective Villarreal had personal
knowledge, and therefore the testimony is not hearsay.





[8]  The relevant testimony of Detective Villarreal
appellant complains of consists of the following: (1) the testimony about the
detective interviewing Ryan Hudnall=s
estranged wife to identify appellant as a suspect; (2) finding out Ryan Hudnall
is a friend of appellant=s through interviewing Mr. Hudnall=s estranged wife; (3) testimony by the detective that
he saw appellant=s name on the motel=s
register during his investigation; (4) testimony about the traffic stop in Big
Cabin, Oklahoma, identifying appellant as a suspect; and (5) the videotape from
the traffic stop showing appellant driving.





[9]  In appellant=s
brief, the fifth issue is incorrectly numbered as issue six. 





*  Senior Justice J. Harvey Hudson sitting by
assignment.